Budimir MATEK, et al., Plaintiffs,

v.

Joseph MURAT, et al., Defendants.

Marijan DUSEVIC, et al., Plaintiffs,

v.

Joseph MURAT, et al., Defendants.

Rex MARTIN, et al., Plaintiffs,

v.

Joseph MURAT, et al., Defendants.

and Related Cross-Actions.

Nos. CV 82–0654–JSL, CV 82–3063–JSL and CV 82–4564–JSL.

United States District Court, C.D. California.

June 19, 1986.

Kinsella, Boesch, Fujikawa & Towle, Los Angeles, Cal., Philip Boesch and Mark K. Brown, for plaintiffs in the Matek (CV82–0654) and Dusevik (CV82–3063) actions.

Borton, Petrini & Conron, Bakersfield, Cal., Warren C. Wetteroth, and Nelson H. Chan, for plaintiffs Rex Martin, Carolyn Martin, David Hill, Diane Hill, Ruth Thayer and Kenneth Thayer, Jr., plaintiffs in the Martin action, No. CV82–4564.

John F. Hendry, Esq. of Garden Grove, Cal., for defendant Orange Production Credit Assn.

Pray, Price, Williams & Russell of Long Beach, Cal., James B. Russell, for defendants Chester and Celia Hummel.

Perona, Langer, LaTorraca & Beck of Long Beach, Cal., Raphael Metzger, for defendants Joseph and Veronica Murat, West Coast Diesel, Inc., and Joseph Murat as Trustee of Port Welding & Machine Works, Inc. Profit Sharing Trust Fund.

Lewis, D'Amato, Brisbois & Bisgaard, Howard M. Jaffe, Los Angeles, Cal., and Michael Fate, Culver City, Cal., for defendants Ronald A. Lebetsamer and Minor, Popeney & Lebetsamer, P.C.

## ORDER GRANTING:

(1) DEFENDANTS' MOTION FOR ORDER SPECIFYING MATERIAL FACTS (RE SECURITIES);

(2) DEFENDANTS' MOTION FOR ORDER SPECIFYING MATERIAL FACTS (RE *MARTIN* RICO CLAIM);

(3) PLAINTIFFS' MOTION TO DISMISS OPCA'S CROSS–CLAIMS AND DISMISSAL OF PENDENT CLAIMS

LETTS, District Judge.

The three motions now before the Court are: (1) the motion for an order specifying

material facts, filed by defendants Joseph and Veronica Murat, West Coast Diesel, Inc., and Joseph Murat as Trustee of Port Welding & Machine Works, Inc. Profit Sharing Trust Fund ("Murat defendants"), which seeks an order holding that the general partnership interests at issue in these consolidated actions are not "securities" under federal law; (2) the Murat defendants' motion for an order specifying material facts, which seeks an order holding that the *Martin* plaintiffs are judicially estopped from asserting a claim under RICO because they had earlier abandoned any such claim; and (3) the *Martin* plaintiffs' motion to dismiss the cross-claims of Orange Production Credit Association ("OPCA") for lack of subject-matter jurisdiction.

The Murat defendants' motions were argued before the Court on June 18, 1986.[1] The *Martin* plaintiffs' motion had been taken under submission by Judge Gadbois prior to the transfer of this action to this Court. Based on this Court's review of the file, and having heard oral argument of counsel, the Court hereby GRANTS all three motions and dismisses all pendent claims in all three consolidated actions.

## I. GENERAL PARTNERSHIP INTERESTS AS "SECURITIES"

The Murat defendants first argue that on the facts of this case, the general partnership interests at issue are not "securities" for the purpose of invoking the protections of (and jurisdiction arising from) the federal securities laws. Defendants Lebetsamer and Minor, Popeney & Lebetsamer (the "attorney defendants") and defendants Chester and Celia Hummel join in the motion. The Court concludes, after considering the documents in the file[2] and the arguments

---

**1.** The Court chooses not to burden this Order with a repetition of its description of this litigation, which is contained in the transcript of the June 18, 1986, hearing. Suffice it to say that the paper generated by the various attorneys in the case, addressed to the various judges in the case, has in this Court's view filled more file drawers than would be warranted in a case involving a hundred times the amount of damages at issue here.

**2.** Specifically, the Court has reviewed the following submissions (and, where relevant, the *underlying documents*) on the securities issue: Notice of Motion and Motion for an Order Specifying Material Facts Existing Without Substantial Controversy, and nine volumes of supporting materials which contain Declarations of Raphael Metzger and Joseph Murat, Request for Judicial Notice, Statement of Uncontroverted Facts and Conclusions of Law, various relevant underlying documents and excerpts of testimony, and Proposed Order, all filed on April 4, 1986, by the Murat defendants; Notice of Joinder and Joinder of Defendants Lebetsamer and Minor, Popeney & Lebetsamer (the "attorney defendants") in the motion, filed May 6, 1986; Joinder of Defendants Chester and Celia Hummel in the motion, filed May 8, 1986; Memorandum of Points and Authorities in Opposition to the motion, and Declaration of Budimir Matek, filed June 5, 1986, by the plaintiffs in the *Matek* and *Dusevik* actions; Statement of Genuine Issues and Objections to Movant's Statement of Uncontroverted Facts and Conclusions of Law, along with Objections to Murat's declaration, both filed June 5, 1986, by the plaintiffs in the

*Matek* and *Dusevik* actions; Memorandum of Points and Authorities in Opposition to the motion, and Declarations of Rex Martin, Kenneth Thayer, Jr., and Nelson Chan, along with a Statement of Genuine Issues, both filed June 6, 1986, by the plaintiffs in the *Martin* action; Reply to Plaintiffs' Opposition, filed June 10, 1986, by the Murat defendants; Objections to Plaintiffs' Evidence and Motion to Strike, filed June 10, 1986, by the Murat defendants; Reply Brief filed June 11, 1986, by the attorney defendants; Supplemental Memorandum of Points and Authorities re Securities Acts Exemptions, filed June 10, 1986, by the attorney defendants; Joinder in Murat defendants' Objections to Plaintiffs' Evidence in Motion to Strike, filed June 13, 1986, by the attorney defendants; Second Request for Judicial Notice, filed May 23, 1986, by the Murat defendants; Third Request for Judicial Notice, filed June 10, 1986, by the Murat defendants; Request for Lodgment of Original Deposition Transcripts and Discovery Responses, filed April 8, 1986, by the Murat defendants; Notice of Lodgment of Original Deposition Transcripts, filed April 14, 1986, by the Murat defendants; Notice of Lodgment of Original Discovery Responses, filed April 30, 1986, by the attorney defendants; Request for Lodgment of Original Deposition Transcripts, filed June 10, 1986, by the plaintiffs in the *Matek* and *Dusevik* actions; Notice of Lodging of Original Depositions and Discovery Responses, filed June 12, 1986, by the plaintiffs in the *Matek* and *Dusevik* actions; Declaration of Mark Kester Brown, filed June 12, 1986, by the plaintiffs in the *Matek* and *Dusevik* actions; Notice of Lodging of Original Responses to Re-

of counsel, that these general partnership interests are indeed not securities.

The Court need not address the contention that under no circumstances can a general partnership interest can be a security. Therefore the Court need not base its decision solely on those cases which support such a bright-line rule. *See, e.g., Goodwin v. Elkins & Co.,* 730 F.2d 99, 103, 107–08 (3d Cir.) (holding that a general partner's interest was not a security, noting that "the *legal* interest which he enjoyed does not fall within the scope of the term 'security' as intended by Congress") (emphasis in original), *cert. denied,* —— U.S. ——, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984); *Elson v. Geiger,* 506 F.Supp. 238, 243 (E.D.Mich.1980) (stating that federal jurisdiction should not be extended to general partnerships), *aff'd,* 701 F.2d 176 (6th Cir.1982); *Hirsch v. duPont,* 396 F.Supp. 1214, 1226 (S.D.N.Y.1975) (holding that general partnership interests by their nature do not have the attributes of securities), *aff'd,* 553 F.2d 750 (2d Cir.1977); *New York Stock Exchange, Inc. v. Sloan,* 394 F.Supp. 1303, 1314 (S.D.N.Y.1975) (stating that "general partners are not investors in 'securities,' even under [an] expansive construction [of that term]"). As to partnerships formed under state statutes incorporating the substance of the Uniform Partnership Act, however, a strong case can be made for such a bright-line rule.[3]

The only case cited to this Court in which an alleged partnership interest was held to constitute a security for purposes of the Securities Acts is *S.E.C. v. Professional Associates,* 731 F.2d 349 (6th Cir.1984). Plaintiffs' reliance on this case is misplaced. In *Professional Associates,* "joint venture" interests were offered in 30 states to approximately fifteen hundred investors in an offering which was not registered under Section 5 of the Securities Act. The SEC brought suit to enjoin further offers and to cause the affairs of the offeror to be wound up. *Id.* at 351–52. The defendants argued that the joint venture interests were really general partnership interests and thus were not securities under the Securities Act.

To this contention the Court responded: Usually a general partnership or a joint venture is not considered a security because the partners or venturers have sufficient power to protect their interests without the aid of the federal securities laws. The partnership or venture interests are not investment contracts because the participants are not solely dependent on the effort of others for profits. In some instances, however, an *apparent* general partnership or joint ven-

---

quests for Admissions, filed June 13, 1986, by the plaintiffs in the *Matek* and *Dusevik* actions; Supplemental Request for Lodgement of Original Deposition Transcripts, filed June 12, 1986, by the plaintiffs in the *Matek* and *Dusevik* actions; Notice of Lodging of Original Depositions, filed June 17, 1986, by the plaintiffs in the *Martin* action; Declaration of Nelson Chan re lodged depositions, filed June 17, 1986; Objection to Reply Memorandum and Supplemental Memorandum of Points and Authorities in Opposition to the Murats' Reply Memorandum, filed June 17, 1986, by the plaintiffs in the *Matek* and *Dusevik* actions; and Objections to Supplemental Declaration of Raphael Metzger Attached to the Murats' Reply Memorandum and Request to Strike, filed June 17, 1986, by the plaintiffs in the *Matek* and *Dusevik* actions.

**3.** While not determinative, a key factor supporting such a rule is the expectation of the parties at the time a general partnership is formed in accordance with the Uniform Partnership Act.

General partners know that the success of the venture is dependent partially on their efforts, and that they are placing at risk far more than is involved in a standard, finite "investment."

Persons forming general partnerships, including the attorneys retained to advise the partners, justifiably have high expectations that their activities are *not* governed by the Securities Acts. *Cf. Landreth Timber Co. v. Landreth,* —— U.S. ——, 105 S.Ct. 2297, 2306, 85 L.Ed.2d 692 (1985) (reasoning that traditional stock is "the paradigm of a security," and that "persons trading in traditional stock likely have a high expectation that their activities are governed by [the Securities] Acts"). In this case the Court finds that there is no material dispute about the fact that these parties—including both plaintiffs and defendants—acted in accordance with an expectation that the general partnership interests were simply that. This cuts strongly against this Court's holding, years after formation of the partnership, that those interests are now to be considered "securities."

ture interest may in fact be an investment contract.

731 F.2d at 356 (citation omitted; emphasis added).

There is, of course, no suggestion in *Professional Associates* that the alleged "partnership" had been formed under the partnership laws of any state, much less one that had adopted the substantive provisions of the Uniform Partnership Act. The most that can be said about this Sixth Circuit case is that it stands for the proposition that in extreme cases, investment contracts which do not bear the usual characteristics of partnership interests may be construed as investment contracts even though for some purposes these interests might also be construed as general partnership interests.

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981), appears to stand for the same proposition. In that case Judge Randall identified three extraordinary circumstances, none of which apply here, in which a relationship that may be characterized for some purposes as a general partnership may nonetheless give rise to a finding that security interests have been created. Judge Randall opined:

> [A]n investor who claims his general partnership or joint venture interest is an investment contract has a difficult burden to overcome.... Such an investor must demonstrate that, in spite of the partnership form which the investment took, he was so dependent on the promoter or on a third party that he was in fact unable to exercise meaningful partnership powers. A general partnership or joint venture interest can be designated a security if the investor can establish, for example, that (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers;

or (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot ... exercise meaningful partnership or venture powers.

*Id.* at 424 (footnotes omitted).

The holding of *Professional Associates*, and the dicta of *Williamson*, therefore do not conflict with the decisions in *Goodwin* and the other cases which hold outright that general partnership interests formed in accordance with state laws which comport with the requirements of the Uniform Partnership Act are not securities. *See Goodwin*, 730 F.2d at 112 (Seitz, concurring) (stating that the Court's conclusion was not inconsistent with the dicta in *Williamson*).

This Court believes that the decisions in these cases should and perhaps do represent the law in the Ninth Circuit. The difficulty is that having been given several apparent opportunities to adopt the position of the *Goodwin* Court, this Circuit has thus far declined to do so. *Compare Parvin v. Davis Oil Co.*, 524 F.2d 112, 115–16 (9th Cir.1975) (holding that a fractional interest in oil and gas leases is a security where efforts made by the non-investor "are the undeniably significant ones, those essential managerial efforts which effect the success or failure of the enterprise") *with Mason v. Unkeless*, 618 F.2d 597, 599 n.3 (9th Cir. 1980) (stating that an investor, "[e]ven if he did not exercise such control as to defeat a finding of a security here, [citing *Parvin*], as a general partner he had authority to do so. That authority might defeat existence of a security here...."). As a result of the apparent adoption of a fact-based test, legal planning remains difficult, and it behooves this Court to address the questions here with reference to the particular facts which have been presented by the parties.

Addressed this way, the question is whether the rights retained and the roles contemplated and played by the non-managing general partners were such that they should be considered as something more than mere investors, giving rise to a con-

clusion that their partnership interests should not be considered investment contracts. This is very different from saying that relationships which are established as partnerships, pursuant to laws prescribing their formation and describing the parameters of the legal relationships created, may be considered "securities" simply because some partners may take a less active role than others in protecting their interests.

As a foundational matter, the securities laws are designed to protect those investors who, generally speaking, may be more accurately characterized as "passive" rather than "active." As one leading District Court put it,

> The securities laws were enacted to provide surveillance for those not in a position to monitor their own investments or in the words of the legislative history to protect those who "cannot personally watch the managers of all his interests as one horse trader watches another."

*Slevin v. Pedersen Associates, Inc.*, 540 F.Supp. 437, 441 (S.D.N.Y.1982) (quoting H.R.Rep. No. 1383, 73d Cong., 2d Sess. 5 (1934)); *see also United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 849, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621 (1975) (Securities acts arose from "the need for regulation to prevent fraud and to protect the interests of investors").

Courts have held that an investor's "active involvement" in the "decision-making process" of a business removes the need for the protection of the securities laws. *Sandusky Land, Ltd. v. Uniplan Groups, Inc.*, 400 F.Supp. 440, 445 (N.D.Ohio 1975). Similarly, in *Inforex Corp. v. MGM/UA Entertainment Co.*, 608 F.Supp. 129, 133 (C.D.Cal.1984), the Court said that when an investor performs acts which are "undeniably significant to the success or failure of the venture," whether or not those acts

could be called either "entrepreneurial or managerial," the investment may be taken out of the "security category."

Significantly, in *Williamson*, 645 F.2d at 419 n.12, upon which the plaintiffs place strong reliance, the Court said that "a finding of significant participation by the plaintiffs in the management of the venture might indeed provide the basis of a motion to dismiss for lack of subject matter jurisdiction." A later Fifth Circuit panel explained that "[p]roof of participation in management would defeat the contention that the interest purchased was a 'security.'" *Fragumar Corp. v. Dunlap*, 685 F.2d 127, 129 (5th Cir.1982).

■ With that legal predicate, the material facts of this case, which are not in substantial controversy, compel the conclusion that the plaintiffs' interests in the Pacific Pride Fisheries Partnership are not securities. First, facts concerning the formation of the partnership indicate that this was not the kind of "passive investment" by a large group that was held to comprise a securities transaction in *Professional Associates*, 731 F.2d 349 (1,500 investors in 30 states who were solicited at nationwide seminars). The Pacific Pride Fisheries Partnership was small, consisting of twelve members. The parties knew each other prior to the formation of the partnership, and the shares were neither advertised nor sold out of state. Several of the non-managing partners were experienced in areas relating to the formation and operation of the partnership business, and were experienced investors. Each of the partners made a sizeable investment in the partnership, an unfortunate fact which goes a long way toward explaining why this litigation was brought and pursued in the first place.[4]

---

**4.** At the hearing on this motion, counsel for the plaintiffs in the *Matek* and *Dusevik* actions argued that plaintiffs Marich, Zivkovic and Dusevik were especially "unsosphisticated" and worthy of the protection of the federal securities laws. The Court notes that all three plaintiffs contributed a substantial amount of money to the venture; that Zivkovic painted the partnership's ship, fished for the partnership, and prior to his partnership interest had fished commercially for salmon in Alaska; that Dusevik owns a masonry business; and that Marich is an industrial painter who prior to his purchase of a partnership interest had invested with Zivkovic in another ship and in an apartment building, and who painted the partnership's ship. The

Second, the partnership agreement itself vests a great deal of control in the non-managing partners. The agreement states that it is formed as a "general partnership under the laws of the State of California." Section 2.5 provides that "[n]o partner may withdraw capital from the partnership without the consent of all the partners." Section 2.7 provides that "[n]o partner shall lend or advance money to or for the partnership's benefit without the approval of a majority in capital interest of the partners." Section 5.1 provides that the partnership books are open to inspection by any partners. Section 6.1, which gives managing partners Murat and Hummel the power to "assume direction of [the partnership's] business operations," also directs them to "consult and confer as far as practicable with the nonmanaging partners." This same section provides that on a managing partner's death, resignation, or disability, "a successor managing partner shall be selected by a majority in capital interest of the partners." Section 6.2 provides that certain acts may be done only with the consent of the majority in capital interest of the partners, including: (a) borrowing money in the partnership name other than in the ordinary course of business or to finance the purchase of partnership properties; (b) transferring or releasing any partnership claim; and (c) selling or leasing any partnership property, with some exceptions. Section 6.5 allows, upon consent of the majority in capital of all partners, an increase in the managing partners' salaries. Section 7.1 allows a new partner to be admitted into the partnership "only with the written approval of the partners holding at least fifty-one percent (51%) in capital interest of the partnership." Finally, section 8.1 limits the way in which a partner may transfer all or part of his partnership interest, granting the other parties a right of first refusal.

Third, the undisputed evidence shows that the plaintiffs exercised their partnership rights and powers. Several of the

plaintiffs signed Partnership Borrowing Authorizations, personal guaranties, and loan agreements with both Security Pacific National Bank and the Orange Production Credit Association. Several of the plaintiffs approved the hypothecation of partnership property, namely the granting of a preferred ship mortgage, and an amendment thereto, to Security Pacific National Bank, and a second preferred ship mortgage to fellow partners Hill, Martin and Thayer. Several of the plaintiffs voted to admit as new partners John Petris and David Hill. Some partners elected to sell all or part of their partnership interests to the partnership or to other partners. Several partners consented to their approval of loans to the partnership by other partners. Additionally, many of the partners actively participated in the conduct of the partnership's business. Hill flew to Alaska to obtain cash with which to purchase fish. Marich painted the partnership's ship. Martin met privately with an OPCA loan officer to discuss a loan for the partnership. Matek borrowed money from Security Pacific National Bank for the partnership's benefit. Zivkovic traveled to Alaska and fished for salmon to sell to the partnership, and helped to paint the partnership's ship. Finally, several partners agreed to retain the law firm which represented Pacific Pride Fisheries in a federal action in Washington and in a threatened foreclosure by Security Pacific National Bank.

In summary, numerous undisputed facts show that as a matter of law, the plaintiffs had "active involvement" in the "decision-making process" of the partnership, *Sandusky*, 400 F.Supp. at 445, and that they performed acts which were "undeniably significant to the success or failure of the venture," *Inforex*, 608 F.Supp. at 133. Further, these same facts reflect "significant participation by the plaintiffs in the management of the venture," *Williamson*, 645 F.2d at 419 n.12, and the kind of "participation in management" that "defeat[s]

Court cannot agree on these facts that these plaintiffs lacked sophistication to the degree suggested by Counsel either in financial affairs

or in the line of business in which the partnership was engaged.

the contention that the interest purchased was a 'security,'" *Fragumar*, 685 F.2d at 129. The facts as to none of the individual plaintiffs rise to a level which would warrant the exceptional application of the tests set forth in *Williamson* [5] and *Professional Associates*. Accordingly, the Murat defendants' motion for an order specifying material facts existing without substantial controversy on the securities issue is GRANTED.

## II. *MARTIN* RICO CLAIMS

The Murat defendants' motion on the RICO claim in the *Martin* action seeks an order holding that "the *Martin* plaintiffs are estopped from asserting their RICO claim because they have unequivocally repudiated and disavowed this claim." The Court believes, having reviewed all submissions and having heard oral argument, that the motion is procedurally correct and should be granted.

■ The undisputed facts are as follows: In 1983, the *Martin* plaintiffs responded to three interrogatories on the RICO claims propounded by the attorney defendants by stating simply, "This allegation is withdrawn." In February, 1985, in a document entitled "Plaintiffs' Memorandum of Points and Authorities in Opposition to the Motion to Set Aside Entry of Clerk's Default," the following statement appears: "It should also be noted that plaintiffs have on several occasions made it abundantly clear that they are not urging any claim under RICO. Mr. Murat well knows that this is an action

for basic, fundamental securities fraud." Motion at 4 (citation omitted). Finally, in October, 1985, when the Murat defendants made a motion for an order specifying material facts existing without substantial controversy on the RICO claims in all three consolidated actions, the *Martin* plaintiffs filed no opposition and did not join in the other plaintiffs' opposition. At that time, Raphael Metzger, counsel for the Murat defendants, called William Hickey, the attorney who was acting for the *Martin* plaintiffs at the time, in order to ascertain whether there was indeed any opposition to the motion. According to the Metzger's uncontroverted sworn affidavit, Hickey represented that his clients were not opposing the motion. Metzger then wrote a confirming letter to Hickey, which was submitted as an exhibit to the motion now before this Court. At the hearing on October 28, 1985, Judge Gadbois denied the Murat defendants' motion "without prejudice to its being renewed later" before Metzger could call the Court's attention to the *Martin* plaintiffs non-opposition. When Metzger informed the Court of the non-opposition conversation, Judge Gadbois asked if Hickey was in the courtroom. A person identified in the official transcript only as "A Voice," which Metzger states was Hickey, is reported to have said, "I am not appearing." Judge Gadbois then adjourned the hearing.

On these facts, the Court agrees with the Murat defendants that the doctrine of judicial estoppel must preclude the *Martin*

---

5. In *Williamson*, Judge Randall, after reciting the three examples of situations in which a general partnership interest might be designated a security, concluded:

> None of these factors appear to be present in this case. In the first place, there is no representation or indication in the record that the partnership agreement did not really give the investors partnership powers.... When trouble arose in late 1975, the plaintiffs did attend joint venture meetings and take a greater interest in important decisions.
>
> In the second place, ... it is clear that the plaintiffs had the business expertise and knowledge adequate to the exercise of partnership powers in a real estate joint venture....

> [Third,] the plaintiffs have at no point asserted or alleged that Godwin Investments was uniquely capable of either managing or developing the property, or that their dependence of the expertise of Godwin Investments was so great that they were incapable, within reasonable limits, of finding a replacement [manager].... We conclude, therefore, that the plaintiffs have not raised the possibility of a dependence on the unique or irreplaceable expertise of Godwin Investments as an issue in this case.

645 F.2d at 424–25. This Court believes that with reference to the three factors set forth in *Williamson*, the plaintiffs in that case presented more sympathetic facts than do the plaintiffs in the case before this Court.

plaintiffs from continuing to pursue any RICO claim against them. As one court has explained,

> "Judicial Estoppel" is a well established rule that a party may not assert contrary positions in the same or related proceedings. It is, more properly, a rule which estops a party from "playing fast and loose" with the courts. *Scarano v. Central R. Co. of N.J.*, 203 F.2d 510 (3d Cir.1953); *In Re Johnson*, 518 F.2d 246 (10th Cir.), *cert. denied*, 423 U.S. 893 [96 S.Ct. 191, 46 L.Ed.2d 125] (1975).

*Selected Risks Ins. Co. v. Kobelinski*, 421 F.Supp. 431, 434 (E.D.Pa.1976). *Accord, Wade v. Woodings-Verona Tool Works, Inc.*, 469 F.Supp. 465, 467 (W.D.Pa.1979).

For this Court to refrain on these facts from applying judicial estoppel would be both inequitable and inefficient, and would allow the *Martin* plaintiffs to disavow representations made to both the Court and to the defendants. Accordingly, the Murat defendants' motion for an order specifying material facts existing without substantial controversy on the RICO claim in the *Martin* action is GRANTED.

### III. OPCA CROSS–CLAIMS AND OTHER PENDENT CLAIMS

The plaintiffs in the *Martin* action filed on November 25, 1985, a motion to dismiss OPCA's cross-claims for want of subject-matter jurisdiction. The Murat defendants joined in this motion on December 10, 1985.

■ The "determination of whether to exercise jurisdiction over pendent state claims is within the discretion of the district court, and the district court is not required to exercise such jurisdiction." *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1318 (9th Cir.1985). Dismissal of pendent state claims is appropriate where the state law issues predominate in terms of proof, scope of the issues raised, or comprehensiveness of the remedies sought, or where retaining the pendent claims will impede the interests of judicial economy, convenience, and fairness to the parties. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966). "Other things being equal, it is preferable for state law claims to be adjudicated by state courts." *Determined Productions, Inc. v. R. Dakin & Co.*, 514 F.Supp. 645, 649 (N.D.Cal.1979), *aff'd*, 649 F.2d 866 (9th Cir.1981). "In weighing considerations of economy, ... the Court must be mindful of the increasingly heavy demands upon its limited resources." *Id.*

■ This Court's disposition of other motions in this order makes clear that there is little point in the Court's exercising its discretion to entertain any of the numerous pendent state claims in these three consolidated actions, including OPCA's cross-claims. Federal subject-matter jurisdiction now exists in this case only by virtue of the RICO claims in the *Matek* and *Dusevik* actions.[6] Given the complexity of civil RICO claims, to entertain the pendent claims as well would needlessly complicate a trial and would unnecessarily waste the Court's time. Additionally, the pendent state claims involve substantially different issues and proof than that required to establish a RICO violation, giving rise to a strong likelihood that state law issues would predominate in the lawsuit. *See Gibbs*, 383 U.S. at 726–27, 86 S.Ct. at 1139–40. Further, the interests of judicial economy, and convenience and fairness to the litigants would not be served by this Court's retention of the pendent claims. *See Determined Productions*, 514 F.Supp. at 649. Indeed, this Court believes this litigation will be conducted more efficiently and economically if all state claims are heard by a state court, especially given that there are numerous state actions pending between these parties, some of which

---

**6.** The Court notes that the California Supreme Court recently held that California courts have concurrent jurisdiction over civil RICO actions. *Cianci v. Superior Court*, 40 Cal.3d 903, 908, 221 Cal.Rptr. 575, 710 P.2d 375 (1985). While the choice of forum is the plaintiffs', *Cianci* certainly indicates that if the plaintiffs wish to have all their claims—including those for RICO—heard in a single forum, they may do so.

have been stayed pending the outcome of this federal lawsuit.

Consequently, this Court is persuaded not to exercise its discretion to entertain the pendent claims in these three consolidated cases, including the cross-claims of OPCA. All such claims and cross-claims are therefore dismissed without prejudice to their merits.

## IV. CONCLUSION

Federal subject-matter jurisdiction in this action was based on the Securities Act of 1933, the Securities Exchange Act of 1934, and the Organized Crime Control Act of 1970. Jurisdiction over several other claims depended on the Court's exercise of its discretionary power to entertain pendent state claims. This Court's order means that it has subject-matter jurisdiction only over the RICO claims in the *Matek* and *Dusevik* actions, and is retaining only those claims.

Pursuant to Fed.R.Civ.P. 54(b), the Court finds that there is no just reason for delay of an appeal and expressly directs the entry of judgment as follows: Judgment is granted for the defendants and against the plaintiffs on the First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Counts (securities claims) of the Third Amended Complaint in the *Matek* action, CV 82–0654–JSL; on the First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Counts (securities claims) of the Complaint in the *Dusevic* action, CV 82–3063–JSL; and on the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth (securities claims) and Sixteenth (RICO claim) Counts of the Complaint in the *Martin* action, CV 82–4564–JSL. If an appeal is taken, in the interests of efficiency and fairness, the Court will stay all proceedings on the remaining RICO claims pending the Ninth Circuit's decision. If the state claims at issue in this case are refiled in state court, the Court will entertain a motion to stay the RICO proceedings until the requisite predicate acts are established in that forum.

So ordered.