The FEDERAL LAND BANK OF
OMAHA, Appellee,

v.

Ivan Gene GIBBS, Appellant,

v.

UNITED STATES of America.

The FEDERAL LAND BANK OF
OMAHA, a Corporation,
Appellee,

v.

Ivan Gene GIBBS, a/k/a Gene Gibbs;
Romona N. Gibbs, a/k/a Romona
Gibbs; Ivan G. Gibbs, a/k/a Ivan
Gibbs; Beulah M. Gibbs, a/k/a Beulah
Gibbs; Appellants,

Ottumwa Production Credit
Association, Appellee,

Michael Leroy GIBBS and Wanita
Gibbs, Appellants,

v.

Joe RICHARDSON, Ron L. Christensen;
Chester Anfinson; John Harling; Federal Intermediate Credit Bank of Omaha; Donald E. Wilkinson; and the
Farm Credit Administration, Appellees.

No. 86–1128.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1986.

Decided Jan. 14, 1987.

Rehearing and Rehearing En Banc
Denied Feb. 23, 1987.

Marlyn S. Jensen, Osceola, Iowa, for appellants.

Dennis D. Jerde, Des Moines, Iowa, for appellees.

Nikki Calvano, Dept. of Justice, Washington, D.C., for U.S.

Before HEANEY and ROSS, Circuit Judges, and DUMBAULD,* United States Senior District Judge.

HEANEY, Circuit Judge.

The Gibbs family,[1] which has farmed in Iowa for three generations, appeals from the district court's order dismissing several of their claims and remanding the case to the state court from which appellees had removed it under 28 U.S.C. §§ 1441 and 1442. For the reasons set forth below, we affirm.

## BACKGROUND

In March, 1984, the Gibbs attempted to obtain adequate financing for their farm operations. They were indebted to both the Federal Land Bank of Omaha (FLB) and the Ottumwa Production Credit Association (PCA), owing approximately $155,000 to the FLB on a 1979 mortgage and $152,871 to the PCA for previous operating loans. The Gibbs claimed that their collective assets were worth approximately $580,000 as of that date.

The dispute stems from the Gibbs's and the PCA's differing interpretations of the 1984 financing arrangements. The Gibbs contend that the PCA promised them it would provide sufficient financing to continue their operations, to buy additional cattle, and to pay the annual installment on the FLB mortgage. These promises are detailed in a PCA "Application for Loan" form the Gibbs completed in early March. This form, apparently prepared by the PCA[2] for the Gibbs, contains a quarterly breakdown of the Gibbs's expenses, income, and funding requests for the operating year beginning March 1, 1984. As we read it, the form shows that the PCA had approved a budget loan of $290,621 which would constitute approximately $138,000 in additional financing beyond the $152,871 that the Gibbs owed the PCA at the beginning of March, 1984. According to the quarterly entries on this form, the Gibbs's debt to the PCA during the 1984 operating year would reach a maximum of $235,201 at mid-year but decline to $187,028 by year-end, leaving a negative cash flow of $34,000 for their operation. As security for this new financing, the Gibbs executed a collateral agreement, collateral note, and mortgage with the PCA for $250,000 on March 15, 1984, expanding the PCA's junior mortgage interest by approximately $150,000. The Gibbs allege that in obtaining the additional mortgage interest, the PCA purposely created a situation in which their assets were so encumbered that there was no realistic possibility of obtaining alternative financing to pay the 1984 operating expenses including the Gibbs's living expenses and the FLB mortgage payment. In this manner, the Gibbs contend the PCA obtained significant leverage to coerce them into selling farm assets to reduce debt and finding off-farm employment. The Gibbs allege that they would not have provided the PCA with additional security had they known that they would not receive the funds necessary to continue operating through 1984.

The PCA, however, subsequently regarded the $250,000 mortgage, collateral note, and collateral agreement as additional security for the Gibbs's existing debt plus a $10,450 advance for the first quarter of 1984. The PCA contends that additional 1984 financing remained the subject of ne-

---

* The Honorable Edward Dumbauld, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation.

1. Appellants Ivan and Beulah Gibbs are the parents of appellant Ivan Gene Gibbs. Appellants Ivan Gene Gibbs and Romona Gibbs are the parents of Michael Gibbs who, along with his wife Wanita, is also an appellant.

2. The form is typed and bears the typed initials of a PCA officer signifying apparent approval of the loan.

gotiation. On March 15, 1984, the PCA wrote to the Gibbs declining to advance the funds necessary to pay the FLB and requiring significant operational adjustments as conditions precedent to continued financing. As a consequence of the PCA's refusal to advance funds for the FLB mortgage payment and their inability to offer additional security to obtain other funds, the Gibbs defaulted on their April 1 mortgage payment to the FLB.

Nonetheless, negotiations between the PCA and the Gibbs apparently continued. The PCA advanced an additional $11,880 in operating funds to the Gibbs on June 27, 1984, but refused to advance funds for the purchase of cattle as the Gibbs had requested in their March 15, 1984, loan application. On July 11, 1984, the PCA wrote to inform the Gibbs that it would advance no more funds unless the Gibbs pledged additional security.[3] The PCA also notified them that the FLB planned to foreclose on its mortgage unless the Gibbs could guarantee the overdue April 1, 1984, payment.

Further negotiations were apparently unsuccessful, for on August 21, 1984, the FLB notified the Gibbs that the whole amount owed on their 1979 mortgage, $159,382.47, was due. The FLB petitioned for foreclosure on November 1, 1984, in the District Court for Wayne County, Iowa. Appearing through attorney Thomas L. Flynn, the Gibbs answered this petition on November 13, 1986. Because the PCA held a junior mortgage on the Gibbs's property, the FLB named the PCA as a codefendant in its foreclosure petition.

On December 11, 1984, the FLB moved for summary judgment on its foreclosure petition. Thomas Flynn withdrew as attorney for the Gibbs on December 26, 1984. On the following day attorney Marlyn Jensen appeared for the Gibbs and moved for a continuance of the scheduled December 28, 1984, hearing on the FLB's summary judgment motion. In addition, Jensen sought to amend the Gibbs's answer to the foreclosure petition. In this proposed amendment, the Gibbs sought to bring additional parties into the foreclosure action: the Federal Intermediate Credit Bank of Omaha, the Farm Credit Administration, Donald Wilkinson, Governor of the Farm Credit Administration, John Harling, President of the Federal Intermediate Credit Bank of Omaha, Ron L. Christensen, Vice-President of the Federal Land Bank of Omaha, Joe Richardson, loan officer of the PCA, and Chester Anfinson, Senior Vice-President of the PCA.

Along with additional parties, the Gibbs's proposed amendment raised additional claims which derive from their theory that all components of the Farm Credit Administration act as a single entity with a specific purpose of eliminating family farms in violation of the policies Congress has stated in the statute establishing and implementing the Farm Credit Administration. According to the Gibbs, this policy accounts for the PCA's bad faith negotiations with them in 1984 over financing and the PCA's failure to provide funds for the 1984 mortgage payment to the FLB. In the proposed amendment to their foreclosure action pleadings, the Gibbs brought claims alleging that actions pursuant to this policy constituted (1) fraud, (2) tortious interference with the Gibbs's farming business, (3) racketeering in violation of RICO statutes, 18 U.S.C. §§ 1961–68, and (4) violations of the Gibbs's civil rights cognizable under 42 U.S.C. § 1983.

On January 7, 1985, the District Court for Wayne County granted the FLB's foreclosure petition. In addition, the court granted the Gibbs's motion for leave to amend their answer to the foreclosure petition to assert claims against the appellees

---

**3.** There is nothing in the record to suggest, however, that the Gibbs were capable of providing additional security. The $250,000 mortgage interest that they gave the PCA on March 15, 1984, was on the whole of their 800 acres, the same 800 acres mortgaged to the FLB. When they received the $11,880 advance from the PCA for the second quarter of 1984, they gave the PCA security interests in three vehicles, including a 1951 truck.

arising out of the 1984 loan negotiations. On January 25, 1985, the appellees petitioned the federal district court for removal under 28 U.S.C. §§ 1441 and 1442.

The Gibbs promptly requested the district court to remand the matter to the Iowa courts. The motion was denied. The Gibbs then moved to amend their pleadings to clarify the claims they brought in state court and to add antitrust claims. On December 15, 1985, the district court issued a memorandum opinion dismissing some claims and parties and remanding the case to the Iowa court. The Gibbs's timely appeal to this Court followed.

While the appeal to this Court was pending, litigation recommenced in the District Court for Wayne County, Iowa. On February 5, 1986, the state court ruled that it had reacquired jurisdiction over the proceedings and denied the Gibbs's motion for a new trial. In addition, the state trial judge denied the Gibbs's motion that he recuse himself retrospectively with regard to his previous decisions. (Nevertheless, he promptly recused himself from further involvement.) The Gibbs have appealed the state court's February 5, 1986, order to the Iowa Supreme Court, where the case is pending.

## DISCUSSION

■ Having carefully reviewed the record, including the supplemental information the parties provided this Court following oral argument, we hold that the district court, with one exception, has correctly disposed of the issues presented. Unlike the district court, we choose not to address whether the Iowa court had subject matter jurisdiction over the Gibbs's RICO claim. Courts are split on this issue,[4] and we need not resolve it in this case. The Gibbs's RICO claim, like their section 1983 and antitrust claims, is both vague and conclusory; consequently, it fails to state a claim on which relief can be granted. Thus, for a different reason, we affirm the district court's decision to dismiss this claim.

As to the remaining issues, we affirm the district court's decision in (1) dismissing the section 1983 claim, (2) declining to permit the Gibbs to amend their pleadings to add antitrust claims, (3) dismissing the remaining claims against the Farm Credit Administration and Donald Wilkinson, (4) denying the remaining appellees' motion to dismiss, and (5) remanding the remaining claims to state court.

■ Buried under the meritless RICO, section 1983, and antitrust claims, the one contention of the Gibbs that has merit, if their allegations are correct, is that the PCA reneged on its agreement to provide them with funds to make the FLB payment, to buy cattle, and to keep their farm operating. The Gibbs's contention that they would not have provided the additional security represented by their March 15, 1984, mortgage with the PCA had they not received the PCA's commitment for funding in 1984 is not an implausible one. If the Gibbs's allegations are true, they may have stated a defense to the FLB's foreclosure action or they may be entitled to damages from the PCA. It is for the Iowa state courts, however, to determine if the Gibbs's allegations are true and, if true, whether they constitute a defense to the foreclosure action or provide a basis for damages.

Accordingly, we affirm the district court.

■

---

4. *See, e.g., Matek v. Murat,* 638 F.Supp. 775 (C.D.Cal.1986); *Cianci v. Superior Court,* 40 Cal.3d 903, 710 P.2d 375, 221 Cal.Rptr. 575 (1985).