SAES GETTERS S.p.A., Plaintiff,

v.

ERGENICS, INC., Defendant.

Civ. A. No. 89–649.

United States District Court,
D. New Jersey.

June 15, 1992.

Burtis W. Horner, Stryker, Tams & Dill, Newark, NJ, Keith V. Rockey, Rockey & Rifkin, Chicago, IL, David R. Murphy, Quaintance & Murphy, Alexandria, VA, for plaintiff.

Bruce S. Edington, Robinson, St. John & Wayne, Newark, NJ, David F. Dobbins, Patterson, Belknap, Webb & Tyler, New York City, and James Kinzer, Kinzer, Plyer, Dorn, McEachran & Jambor, Chicago, IL, for defendant.

## OPINION

CHESLER, United States Magistrate Judge.

This matter comes before the Court on defendant's application for leave to amend the Final Pretrial Order to contest the validity of U.S. Patent Number 4,312,669 (hereinafter referred to as the "Boffito patent") and on plaintiff's cross-motion for summary judgment on the issue of validity. The parties have consented to have the undersigned hear and dispose of these and related motions. An Order referring these applications to the undersigned has been issued by the Honorable Harold A. Ackerman, U.S. District Judge. For the reasons set forth below, plaintiff's motion for summary judgment will be granted; defendant's motions are denied as moot.

## INTRODUCTION

This action was commenced on February 17, 1989 by Saes Getters S.P.A. ("Saes") with the filing of a Complaint alleging that defendant Ergenics, Inc. ("Ergenics") had been infringing United States Patent No. 3,926,832 (the "Barosi patent"). On November 30, 1989, plaintiff amended the Complaint to assert that Ergenics had also infringed the Boffito patent. Subsequently, the Court issued a preliminary injunction enjoining Ergenics from infringing the Boffito patent through its sales of HY–STOR 402 and HY–STOR 402(C). *See Saes Getters S.P.A. v. Ergenics Inc.*, 17 U.S.P.Q.2d 1581, 1990 WL 117970 (D.N.J.1990).[1] At the same time, the Court rejected defendant's motion for summary judgment based upon the asserted invalidity of the Boffito patent.

1. The Court, in a separate proceeding, issued a preliminary injunction barring Ergenics from infringing the Barosi patent.

## BACKGROUND [2]

The Boffito patent was issued in 1982 to cover a process for "gettering" gas using a combination of Zirconium, Vanadium, and Iron. Getters are used for such commercial purposes as maintaining a vacuum inside electron tubes. Getters do this by converting gases inside a container into solids, which then fall to the surface of the container. The conversion from gas to solid is conducted through a chemical reaction between the "getter" and the gas. As Judge Ackerman noted: "This function provides an explanation for the name of the device since the device is used to 'get' the gases inside the electron tube." 15 U.S.P.Q.2d at 1213.

The gettering process claimed in the Boffito patent permits water and water vapor to be "sorbed" at relatively low temperatures without releasing hydrogen and allows relatively low temperature "activation" of the getter.[3] Claims one and three of the Boffito patent are representative of the patent's claims.

Claim one of the patent states:

We claim:

1. A process for the sorption of gas from a closed vessel comprising the steps of:

(A) introducing into the vessel a non-evaporable ternary gettering alloy whose composition in weight percent when plotted on a ternary composition diagram in weight percent Zr. [zirconium] weight percent V [vanadium] and weight percent Fe [iron] lies within a polygon having as its corners the points defined by:

a—75% Zr—20% V—5% Fe

b—45% Zr—20% V—35% Fe

c—45% Zr—50% V—5% Fe

(B) evacuating the vessel to a pressure of less than 10 (− 2) torr

(C) activating the gettering alloy by heating the ternary alloy to a temperature of greater than 700 degrees C, and

(D) reducing the temperature to a value between 400 degrees and 25 degrees C. Plaintiff's Exhibit B.[4] Similarly, claim 3 of the patent states:

We claim:

1. A process for the sorption of gas from a closed vessel comprising the steps of:

(A) introducing into the vessel a non-evaporable ternary gettering alloy whose composition in weight percent when plotted on a ternary composition diagram in weight percent Zr. [zirconium] weight percent V [vanadium and weight percent Fe [iron] lies within a polygon having as its corners the points defined by:

a—75% Zr—20% V—5% Fe

b—45% Zr—20% V—35% Fe

c—45% Zr—50% V—5% Fe

(B) evacuating the vessel to a pressure of less than 10 (− 2) torr

(C) activating the gettering alloy by heating the ternary alloy to a temperature of not greater than 450 degrees C for a time of between 1 to 10 minutes; and

(D) reducing the temperature to a value between 400 degrees and 25 degrees C. Plaintiff's Exhibit B.

Defendant's plea of invalidity in this case is based upon two separate contentions. First, the defendant asserts that the patent's claims are anticipated by the prior art reference of one Daniel Shaltiel. Defendant also contends that the Boffito process was obvious within the meaning of section 103 of Title 35 of the United States Code in light of the prior art.

■ These claims were rejected by the Patent and Trademark Office, upon re-exam-

---

**2.** The factual background of this matter is set forth in some detail in Judge Ackerman's prior opinions granting plaintiff's application for a preliminary injunction. Thus, for a complete recitation of the facts that precipitated this action, see *Saes Getters v. Ergenics*, 15 U.S.P.Q.2d 1212, 1990 WL 117967 (D.N.J.1990) and *Saes Getters*, 17 U.S.P.Q.2d at 1583.

**3.** "Activation" is a process through which the surface of the getter is cleansed of oxidized mate-

rial, thereby permitting the surface of the gettering material to directly interact with the gas to be "sorbed."

**4.** The Boffito patent consists of eight claims that involve different percentages of composition metals and different activation temperatures.

ination, and by Judge Ackerman at the preliminary injunction stage. Indeed, defendant's first "Report on Infringement and Validity Issues" indicated that "Ergenics does not contest the validity of the Boffito patent." [5] *See* 17 U.S.P.Q.2d at 1586. Defendant's initial instincts were correct, for there is nothing in defendant's current submission that warrants any determination different from that of the patent office and Judge Ackerman.

## DISCUSSION

### A. The Applicable Standard of Review

The Court may grant summary judgment only if the pleadings, supporting papers, affidavits, and admissions on file, when viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *see Todaro v. Bowman,* 872 F.2d 43, 46 (3d Cir.1989); *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.), *cert. dism'd,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

At the summary judgment stage, the judge's function is not to weigh the evidence and discern the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue. *Id.* at 248, 106 S.Ct. at 2510. A fact is material if it influences the outcome of the

action under the governing substantive law. *Id.*

Thus, the moving party essentially bears two burdens. First, the moving party bears the burden of production, of making a prima facie showing that it is entitled to summary judgment. Once such a showing is made, this burden shifts to the non-moving party, who must prove that the moving party is not entitled to summary judgment. Second, the moving party bears the burden of persuasion. This burden is a stringent one which always remains with the moving party. If there remains any doubt as to whether a trial is necessary, summary judgment should not be granted. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 330–33, 106 S.Ct. 2548, 2556–58, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–61, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *see generally* C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil 2d § 2727 (1983).

### B. Ergenics's Claim of Anticipation

■ As noted by Judge Ackerman in his Opinion enjoining Ergenics's infringement of the Boffito patent:

Each claim of a patent is presumed valid and the burden of production and persuasion is on the challenger to prove the invalidity of each claim by clear and convincing evidence. 35 U.S.C. § 282; *see also SSIH Equip., S.A. v. U.S. Intern. Trade Comms'n,* 718 F.2d 365, 375 [218 USPQ 678] (Fed.Cir.1983). Moreover, this burden is enhanced where the challenger relies upon prior art that was before the Patent and Trademark Office, ("PTO") when the patent was issued. *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d

---

5. In moving for summary judgment, plaintiff argues that defendant should be judicially estopped from contesting validity in view of this concession.

Judicial estoppel precludes a party from asserting contrary positions in the same or related proceedings. *See Matek v. Murat,* 638 F.Supp. 775, 783 (C.D.Cal.1986), *aff'd.* 862 F.2d 720 (9th Cir.1988). The doctrine of judicial estoppel focuses on the connection between the litigant and the judicial system, *see Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988), and has been applied to prevent a litigant's use of inconsistent statements where such use would result in a means of ob-

taining an unfair advantage against an adversary. *See Rockwell International Corp. v. Hanford Atomic Metal Trades Council,* 851 F.2d 1208, 1210 (9th Cir.1988); *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3d Cir.1953) (noting that courts should not tolerate intentional self-contradiction as a means of obtaining an unfair advantage against an adversary); *Matek,* 638 F.Supp. at 783 (holding that judicial estoppel would be applied where refraining to do so would be inequitable and inefficient and would allow plaintiffs to disavow representations made to both the court and the defendants).

In view of the determination that the Court has reached on the merits, this particular issue has been rendered moot.

1350, 1359 [220 USPQ 763] (Fed.Cir.1984), *cert. denied,* 469 U.S. 821 [105 S.Ct. 95, 83 L.Ed.2d 41, 224 USPQ 520] (1984).

17 U.S.P.Q.2d at 1585.

■ In opposition to the entry of the preliminary injunction, Ergenics argued before Judge Ackerman that the Boffito patent was anticipated by the prior publications of Daniel Shaltiel, prior art that was before the Patent and Trademark Office when the patent was granted. To anticipate claims asserted in a patent, a single prior art reference must teach each and every element of the claimed inventions. *Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co.,* 730 F.2d 1452, 1458 (Fed.Cir. 1984). Judge Ackerman concluded that there was no anticipation because, although Shaltiel described the precise alloy composition used by the Boffito process patent, Shaltiel never described a *gettering process* for using the material. Judge Ackerman held that "Shaltiel clearly does not anticipate the Boffito *process,* because it does not describe the process of using the subject alloy for gettering and, in fact, never refers to the gettering process." 17 U.S.P.Q.2d at 1586 (emphasis added).

Judge Ackerman amplified this holding with the following language:

The Boffito patent concerns a gettering process conducted at low pressures—below 10 to the (− 2) torr. The hydrogen sorption functions taught by Shaltiel require the use of extremely high pressures which is contrary to the gettering process and that under the Boffito patent. In particular, Shaltiel's use of the alloy was made at pressures ranging from 5 atmosphere to 61 atmospheres. *See* plaintiff's Exhibit I, at p. 121. In comparison, the Boffito process involves the use of an evacuated vessel with pressures of less than 10 to the (− 2) torr. and Dr. Sandrock suggests the use of the lowest possible pressures for effective gettering. In addition, Shaltiel discusses the use of its alloy only with respect to the sorption of hydrogen and not other gases, whereas a getter must function in the presence of other gases. Hence, since Shaltiel does not involve a gettering process and contradicts the claimed element

of reduced pressure, it cannot anticipate the Boffito patent.

17 U.S.P.Q.2d at 1587.

In response to plaintiff's summary judgment motion, defendant has offered no new evidentiary material that would controvert these conclusions. Indeed, as plaintiff has noted in its brief, defense counsel conceded, at oral argument before Judge Ackerman, that Shaltiel did not describe "each and every step of the claimed method." Transcript of July 23, 1990 Proceeding. Clearly, as a matter of law, Shaltiel does not anticipate the Boffito patent.

C. Ergenics's Claim of Obviousness

■ In opposition to the issuance of the preliminary injunction, Ergenics also maintained that the Boffito patent was invalid as obvious under 35 U.S.C. § 103. Claims in a patent are obvious when "differences between the claimed inventions and prior art are such that the invention as a whole would have been obvious to one of ordinary skill at the time the invention was made." *Atlas Powder Co. v. E.I. Du Pont De Nemours & Co.,* 750 F.2d 1569 (Fed.Cir.1984).

Judge Ackerman stated:

. In assessing the obviousness of a patented invention, consideration should be given to "(1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) the objective evidence of secondary considerations." *Loctite [Corp. v. Ultraseal, Ltd.] supra,* [781 F.2d 861] at 872 [ (Fed.Cir.1985) ], *citing Graham v. John Deere Co.,* 383 U.S. 1 [86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459] (1966). A *prima facie* case of obviousness is adequately rebutted where it is demonstrated that a claimed invention excels over the prior art as to one of their common properties. *See In re Chupp,* 816 F.2d 643, 646–47 [2 USPQ2d 1437] (Fed. Cir.1987).

17 U.S.P.Q.2d at 1587.

Ergenics argued before Judge Ackerman that the Shaltiel and Giorgi papers rendered plaintiff's claim obvious. The Giorgi paper, however, merely disclosed the long standing existence of a need for bulk getters operating

at lower temperatures, and, as Judge Ackerman found, "if anything, this reference indicates that the process claimed by the Boffito patent is not obvious because it demonstrates that there was a long-felt demand for such a gettering process which could and effectively be developed in the industry." *Id.* at 1587–88.

Judge Ackerman concluded that Shaltiel's paper did not, as defendant argued, "dispose of what Giorgi proposed." 17 U.S.P.Q.2d at 1587. Initially, Judge Ackerman noted that Shaltiel's disclosures did not describe a "gettering" process at all. *Id.* Defendant apparently did not even contest plaintiff's reliance on scholarly material indicating that a "getter," by definition, must sorb various gases at low pressure. *See* Mendelsohn, M.H., "Intermetallic Compounds as Bulk Getter," *Journal of the Less–Common Metals,* 74 (1980) 449 (hereinafter referred to as "Mendelsohn") at 450 (stating that "the outstanding characteristic of any getter is its ability to absorb various gases rapidly at low pressure.") Shaltiel merely disclosed an alloy capable of sorbing hydrogen. Judge Ackerman found that "this fact alone did not make it obvious that it would be useful as a getter because getters (contrary to Shaltiel's teaching) *require* low pressures and must work in the presence of other gases." 17 U.S.P.Q.2d at 1588. Similarly, Mendelsohn notes that:

the matter of finding a bulk getter is not necessarily as simple as finding an alloy which will absorb hydrogen gas. The ability of a material to absorb hydrogen gas at several atmospheres of pressure or even at around 1 atm pressure does not imply or guarantee that it will absorb a substantial quantity of gas rapidly at low pressures (approximately $10 (^{-3})$ to $10 (^{-6})$ torr). Also a getter must function in the presence of other gases, particularly CO, $N_2$, and $O_2$.

Mendelsohn, *supra,* at 450. Thus, this distinction considered in conjunction with the patent's commercial success, long felt need,[6] and competitors acquiescence, led Judge Ackerman to conclude that the claims in the patent were not obvious.

The additional evidence that defendant now presents on this issue, evidence not previously submitted to Judge Ackerman, is the proffered testimony of Dr. Philip Danielson:[7]

Q. You were asked about hydrogen in one of Mr. Rockey's questions there. Is there any doubt in your mind, Mr. Danielson, that the Shaltiel paper discloses a ternary alloy getter for hydrogen?

A. No doubt.

Deposition of Dr. Philip Danielson ("Danielson Dep.") at 24–25.

\* \* \* \* \* \*

Q. If a substance is suspected as having gettering properties, how are these activation conditions or parameters determined?

A. Experimentation.

Q. Is that routine laboratory procedure?

A. Yes

Danielson Dep. at 8.

Defendant also relies on testimony of Dr. Bruno Ferrario, plaintiff's expert:

Q. Well, my understanding is that activation is a specific thing; I mean the getters themselves, there are numerous getters?

A. Oh, yes, very many.

Q. Each one probably has its own activation, has its own set of activation parameters?

A. Yes, yes.

Q. And this is a matter of routine experimentation, how much temperature, what's the pressure, and how long?

A. Yes. This is also—.

\* \* \* \* \* \*

---

6. Defendant's expert, Dr. Gary Sandrock, conceded during depositions that the Boffito process introduced the first commercially successful metal getter that could be activated at low temperature. Deposition of Dr. Gary Sandrock ("Sandrock Dep.") at 36.

7. Dr. Danielson was deposed in connection with defendant's patent misuse defense as someone who attempted to purchase gettering alloy from Saes and was refused because of an alleged attempt to use the Boffito patent improperly. It is not clear how he came to give what amounts to expert testimony for the defendant during that deposition.

Q. So if I understand you correctly then, the activation temperature in clause C of claim 3 of Boffito is an exception to what had been earlier referred to as traditional—

A. Yes.

Q. —activation?

A. This was considered to be the novelty of, as far as the characteristics of these getters were concerned, because getter could be activated at low temperatures.

Deposition of Dr. Bruno Ferrario at 86.

Thus, what defendant now wishes to proffer on the issue of obviousness is the following argument:

1. Shaltiel described a getter capable of sorbing hydrogen.

2. Boffito describes a gettering process, using Shaltiel's alloy, whose novelty is its low temperature activation.

3. Once a material is suspected of being a "getter," determining the temperature at which it can be activated is a matter of routine experimentation.

4. Therefore, because Shaltiel describes a getter using the same material as Boffito used, defendant contends that it would have been "a routine laboratory procedure" to have discovered its low temperature activation, thereby rendering the claims obvious. This, in defendant's view, is sufficient to create a contested issue of material fact as to whether or not the Boffito patent is invalid in light of the Shaltiel and Giorgi references.

■ I conclude that this evidence is manifestly insufficient to create a contested issue of material fact. Initially, it should be reiterated that a patent is presumed valid and that invalidity must be shown by clear and convincing evidence. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). That burden is even heavier where, as here, defendant relies upon the same prior art that was before the patent examiner. *Id.* at 1359.

More significantly, the "evidence" offered by defendant is, in essence, unsupported opinion testimony. While Dr. Danielson, in response to a single, leading question, indicated that Shaltiel disclosed a "getter," there exists no evidence in the record that indicates the manner in which he reached this conclusion, the scientific principles upon which the conclusion was based, or what he considered to be the hallmarks for determining a compound's status as a "getter." In the face of uncontroverted scholarly material establishing that a getter must, by definition, sorb "various gases," *see* Mendelsohn, *supra* at 450, Dr. Danielson's unsupported and conclusory assertion that Shaltiel disclosed a "ternary alloy getter" for a *single* gas, hydrogen, is insufficient to create an issue of fact, for it is beyond question that Shaltiel did not suggest that his compound could sorb any gas other than hydrogen. Moreover, although it is uncontested that a getter must sorb gases at low pressure, *see* Mendelsohn, *supra* at 450, Dr. Danielson indicated that Shaltiel's data did not suggest the ability of his compound to sorb hydrogen at low pressure. Danielson Dep. at 13. In short, despite Dr. Danielson's unsupported and conclusory assertion that Shaltiel's alloy was a getter, his own testimony establishes that the disclosure in the Shaltiel reference does not, by definition, constitute a gettering compound.[8]

Dr. Danielson also conceded that, where a compound was known to getter one gas, the procedure to determine whether it would sorb other gases consisted of "a quick look at the Periodic Table to see if it's likely to be a reasonable chemical reaction. Beyond that, it's an Edisonian approach of cut and try." Danielson Dep. at 11–12.

The "Edisonian approach" described by Dr. Danielson at best illustrates a situation where, given Shaltiel's disclosures, it may have been "obvious to try" and to determine whether Shaltiel's compound would sorb other gases. An "obvious-to-try" situation exists where:

a general disclosure may pique the scientist's curiosity, such that further investigation might be done as a result of the

8. No evidence has been produced to controvert Mendelsohn's designation of the hallmarks of a

"getter," i.e., sorbing various gas rapidly at low pressure.

disclosure, but the disclosure itself does not contain a sufficient teaching of how to obtain the desired result, or that the claimed result would be obtained if certain directions were pursued.

*In re Eli Lilly & Co.*, 902 F.2d 943, 945 (Fed.Cir.1990).

The Federal Circuit has consistently held that "obvious to try" does not constitute obviousness. *Gillette Co. v. S.C. Johnson & Son, Inc.*, 919 F.2d 720, 725 (Fed.Cir.1990) (and cases cited therein). Likewise, the testimony elicited from Dr. Danielson and Dr. Ferrario concerning the experimentation process used to determine activation procedures of a suspected getter at best describes an "obvious to try" situation and, therefore, cannot constitute a basis for finding the claims obvious in light of the prior art.

Thus, neither Dr. Danielson's testimony alone nor his testimony as bolstered by the selected extracts from Dr. Ferrario's testimony is sufficient to create a genuine issue of material fact. The bare, conclusory assertions of Dr. Danielson are simply mere fluff. Ultimately, a trier of fact could not be permitted to rely on this testimony because it is *only* conclusion, unsupported by the slightest evidence or analysis. *Arnold Pontiac–GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 575 (3d Cir.1986) (holding that plaintiff, who offered mere conclusions in opposition to summary judgment, did not demonstrate an issue of material fact). A mere scintilla of evidence, which is a generous characterization of that which has been proffered here, is simply insufficient to raise a genuine issue of fact. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Certainly, such evidence is legally insufficient to meet a standard that requires clear and convincing evidence of invalidity.

## CONCLUSION

For the foregoing reasons, partial summary judgment upholding the validity of the Boffito patent shall be granted. Defendant's motion to amend the Final Pretrial Order to contest the validity of the Boffito patent shall be denied as moot. An appropriate Order shall issue.