**FARGO PARTNERS, a North Dakota Partnership, Appellant,**

v.

**DAIN CORP., Appellee.**

**No. 76–1053.**

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1976.

Decided Aug. 4, 1976.

Stephen W. Plambeck, Fargo, N. D., for appellant; Frank Magill, Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, N. D., on briefs.

Lawrence C. Brown, Minneapolis, Minn., for appellee; Gregory R. Howard, Minneapolis, Minn., and E. T. Conmy, Jr., Conmy, Feste & Bossart, Ltd., Fargo, N. D., on briefs.

Before ROSS, STEPHENSON and WEBSTER, Circuit Judges.

ROSS, Circuit Judge.

This action was brought by Fargo Partners alleging fraud and deceit in violation of the Federal Securities Act of 1933 and the Federal Securities Exchange Act of 1934. Pendent claims under state law were also alleged. After a Fed.R.Civ.P. 12(d) preliminary hearing, the district court [1] dismissed the complaint for want of jurisdiction, holding that the transaction did not involve a security as defined in the Acts, 15 U.S.C. §§ 77b(1), 78c(a)(10). *Fargo Partners v. Dain Corp.*, 405 F.Supp. 739 (D.N.D. 1975). We agree with this conclusion and affirm the judgment of dismissal.

Defendants below were Candletree, a Kansas partnership; its partners individually; Viking Investment Corporation; and Dain Corporation. Candletree's partners are also the officers of Viking Investment. All of the original defendants have been dismissed except Dain Corporation.

The transaction is described in the opinion of the district court:

Fargo Partners (hereinafter "Fargo") entered into an agreement with Candletree, whereby Fargo purchased an apartment development in Blue Springs, Missouri. Dain Corporation functioned in the role of broker. Specifically, Candletree conveyed by warranty deed and bill of sale the project to Fargo in return for a promissory note for $3,375,000.00, with interest. The note was secured by a trust deed and an assignment of rents, leases and profits. Pursuant to the agreement, Fargo has paid Candletree the sum of $265,650.00.

Viking Investment and the three individual partners of Candletree guaranteed Candletree's performance, and further agreed to indemnify Fargo and hold Fargo harmless from any costs, expenses or damages, including reasonable attorney fees caused by any default of Candletree.

As part of the transaction, Fargo signed a management agreement granting back to Candletree or its agents or representatives under its control, exclusive right to management of the property consisting of the apartment project with 248 dwelling units. This grantback, among other things, included Candletree's right to handle marketing for rent-up; to offer for rental not only the dwell-

1. The Honorable Paul Benson, Chief Judge, District of North Dakota.

ing units but any other concessions, including preparation for initial rent-up; to set up tenant selection policy; to show the premises to prospective tenants; to process applications for rental; to prepare dwelling leases and execute same in its own name; to collect, deposit and disburse security deposits; to collect rent, charges and other accounts receivable to be deposited in an account in its own name; to secure full compliance by each tenant with the terms of the lease; to comply with local codes; to investigate service requests of tenants; to make arrangements for utilities; and from said funds collected and deposited, make disbursement for wages, taxes, assessments and payments on debt service on the financing with any remaining balance not required for working capital purposes to be paid monthly to Fargo.

*Id.* at 740–41. The management agreement could be cancelled by Fargo upon 30 days notice, and Candletree had the right to delegate its management responsibilities upon obtaining Fargo's consent.[2]

The land beneath the apartment complex was leased by Candletree to Fargo for 75 years, with purchase options.

In deciding the jurisdictional question the district judge recognized that Fargo's allegations must be taken as true, and all doubts should be resolved in favor of a trial on the merits. *Id.* at 741, 743.

Fargo contends that its role was that of an investor who merely supplied capital, relying upon the managerial expertise of Candletree for a return. In its view the sale coupled with the management agreement constituted an investment contract: a security within the meaning of the federal statutes.

■ In *SEC v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the Supreme Court defined investment contract:

> [A]n investment contract for purposes of the Securities Act[3] means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by the nominal interests in the physical assets employed in the enterprise.

*Id.* at 298–99, 66 S.Ct. at 1103. In that case the Howey Company had induced small investors to buy tracts of land planted in orange groves coupled with a service contract under which the company cultivated, harvested and marketed the crop. The service contract was for a ten year period without any option to cancel. The Court noted that the buyers had no right of entry to market the crop, and lacked the knowledge, skill and equipment necessary in the citrus fruit business. The only way these investors could hope for a return on their investments was by absolute reliance on the effort and abilities of the Howey organization. *See also Tcherepnin v. Knight*, 389 U.S. 332, 338–39, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); *SEC v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 346–47, 64 S.Ct. 120, 88 L.Ed. 88 (1943).

We agree with the district court that the transaction here is not an investment contract under the *Howey* definition. We recognize that the statement in *Howey* that in an investment contract the investor relies *solely* on the efforts of the promoter or another is not taken as a literal requirement of the test. *Miller v. Central Chinchilla Group, Inc.*, 494 F.2d 414, 416–17 (8th Cir. 1974). Where the investors' duties were nominal and insignificant, their roles were perfunctory or ministerial, or they

---

**2.** Under the terms of the First Mortgage, the mortgagor's consent was a prerequisite to replacing Candletree as manager of the apartment. There was no allegation that this consent could not be obtained and no allegation that the management contract was made a condition of the sale of the real estate.

**3.** It is clear that the definition of a security is the same under the Securities Act as under the Securities Exchange Act. *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 847 n. 12, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975).

lacked any real control over the operation of the enterprise, the courts have found investment contracts. *See, e. g., Hector v. Wiens,* 533 F.2d 429, 433 (9th Cir. 1976); *McCown v. Heidler,* 527 F.2d 204, 209 (10th Cir. 1975); *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 485 (5th Cir. 1974); *Miller v. Central Chinchilla Group, Inc., supra,* 494 F.2d at 417; *Andrews v. Blue,* 489 F.2d 367, 375 (10th Cir. 1973); *SEC v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476, 482–83 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973).

 It is clear, however, that Fargo's role was a significant one despite the management contract. Fargo retained ultimate control of the operation of the apartment complex by reserving the right to fire Candletree as its manager on thirty days' notice. Whether it chose to exercise that right or was content to give Candletree a free hand is irrelevant; the *power* to control the business was in Fargo's hands. *Mr. Steak, Inc. v. River City Steak, Inc.,* 460 F.2d 666, 670 (10th Cir. 1972). Fargo's investment in this enterprise was over three million dollars, and it had made other investments in the past. This is not a case where a small investor is helplessly reliant on the promotor's efforts because of lack of business knowledge, finances, or control over the operation. *See SEC v. W. J. Howey Co.,* 328 U.S. 293, 299–300, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); *Bitter v. Hoby's International, Inc.,* 498 F.2d 183, 185 (9th Cir. 1974); *Glen-Arden Commodities, Inc. v. Constantino, Inc.,* 493 F.2d 1027, 1035 (2d Cir. 1974); *Mr. Steak, Inc. v. River City Steak, Inc., supra,* 460 F.2d at 670. There is no showing that Fargo was required to accept a package deal in which the management services went with the apartment complex; certainly under the terms of the agreement it was free to dispense with those services. Under these circumstances an essential prerequisite for the existence of an investment contract—substantial reliance on the efforts of the seller or third parties for a return on the investment—is lacking. In *Howey, supra,* 328 U.S. at 299–300, 66 S.Ct. 1100, the Supreme Court indicated that the sale of a farm or orchard

coupled with management services would not constitute a security, but the additional aspects of the Howey Company's offer, discussed *supra,* made the arrangement an offer of an investment contract. We agree with Judge Benson that in this case " [t]he '. . . something more than fee simple interests in land, something different from a farm or orchard coupled with management services. . . .' which the Supreme Court found in *Howey* is not present here." *Fargo Partners v. Dain Corp., supra,* 405 F.Supp. at 744.

Therefore, the district court correctly held that there was no federal subject matter jurisdiction. Dismissal of the complaint is affirmed.