Budimir MATEK; Eleanor Matek; Martin Matek; Marijan Dusevic; Mario Forgiarini; Mary L. Forgiarini; John Zivkovic; Judith Zivkovic; Vinco Marich; Cvita Marich, Plaintiffs,

and

Rex Martin; Carolyn Martin; David A. Hill; Diane S. Hill; Ruth Thayer, Plaintiffs–Appellants,

v.

Joseph MURAT; Veronica M. Murat; Chester J. Hummel; Celia A. Hummel; Ronald A. Lebetsamer; Minor, Popeny & Lebetsamer; Port Welding & Machine Works, Inc. Profit Sharing Trust Fund; West Coast Diesel, Inc.; Orange Production Credit Association, Defendants–Appellees.

Budimir MATEK; Eleanor Matek; Martin Matek; Marijan Dusevic; Mario Forgiarini; Mary L. Forgiarini, Plaintiffs,

and

Rex Martin; Carolyn Martin; David A. Hill; Diane S. Hill; Ruth Thayer, Plaintiffs–Appellees,

v.

Joseph MURAT; Veronica M. Murat; Port Welding & Machine Works, Inc. Profit Sharing Trust Fund; West Coast Diesel, Inc., Defendants–Appellants.

Budimir MATEK; Eleanor Matek; Martin Matek; Marijan Dusevic; Mario Forgiarini; Mary L. Forgiarini; John Zivkovic; Judith Zivkovic; Vinco Marich; Cvita Marich, Plaintiffs–Appellants,

and

Rex Martin; Carolyn Martin; David A. Hill; Diane S. Hill; Ruth Thayer, Plaintiffs,

v.

Joseph MURAT; Veronica M. Murat; Chester J. Hummel; Celia A. Hummel; Ronald A. Lebetsamer; Minor, Popeney & Lebetsamer; Port Welding & Machine Works, Inc. Profit Sharing Trust Fund; West Coast Diesel, Inc.; Orange Production Credit Association, Defendants–Appellees.

Budimir MATEK; Eleanor Matek; Martin Matek; Marijan Dusevic; Mario Forgiarini; Mary L. Forgiarini; Rex Martin; Carolyn M. Martin; David A. Hill; Diane S. Hill; Ruth Thayer, Plaintiffs–Appellees,

v.

Joseph MURAT; Veronica M. Murat; Chester J. Hummel; Celia A. Hummel; Port Welding & Machine Works, Inc. Profit Sharing Trust Fund; West Coast Diesel, Inc., Defendants,

and

Ronald A. Lebetsamer; Minor, Popeney & Lebetsamer, Defendants–Appellants.

Budimir MATEK; Eleanor Matek; Martin Matek; Marijan Dusevic; Rex Martin; Carolyn M. Martin; David A. Hill; Diane S. Hill; Ruth Thayer, Plaintiffs–Appellees,

v.

Joseph MURAT; Veronica M. Murat; Port Welding & Machine Works, Inc. Profit Sharing Trust Fund; West Coast Diesel, Inc., Defendants–Appellants,

and

Ronald A. Lebetsamer; Minor, Popeney & Lebetsamer, Orange Production Credit Association, Defendants.

Budimir MATEK, Plaintiff–Appellee,

v.

Joseph MURAT; Veronica M. Murat; Port Welding & Machine Works, Inc. Profit Sharing Trust Fund, Defendants–Appellants.

Nos. 86–6292, 86–6302, 86–6303, 86–6371, 86–6372 and 87–5592.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1988.

Decided Nov. 25, 1988.

Nelson H. Chan, and William J. Hickey, Borton, Petrini & Conron, Bakersfield, Cal., for plaintiffs-appellants.

Mark Kester Brown, Kinsella, Boesch, Fujikawa & Towle, Los Angeles, Cal., for plaintiffs-appellees.

Raphael Metzger, Seal Beach, Cal., for defendants-appellees-appellants.

Howard M. Jaffe and David B. Rosenman, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, Cal., and Michael Fate, Culver City, Cal., for defendants-appellees and defendants-appellants, Lebetsamer and Minor, Popeney & Lebetsamer.

Before PREGERSON, CANBY and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

The major issue in this appeal is whether the appellants' general partnership interests are securities under the federal securities laws. The lower court held that the interests were not securities, stayed the appellants' RICO claims pending this appeal, and dismissed pendent state claims. The district court also denied the Murats' motion for execution on bonds given by the appellants to secure an injunction. *Matek v. Murat*, 638 F.Supp. 775, 784 (C.D.Cal. 1986). We AFFIRM the district court's summary judgment as to the securities claims, the stay of the RICO claims, and the dismissal of the state claims. We order execution on the surety bonds.

## BACKGROUND

The plaintiffs comprise two distinct groups: the "Matek" group, primarily composed of Croatian immigrants who settled in the San Pedro, California, area after World War II, and the "Martin" group composed of various people living in Bakersfield, California. The defendants include Joseph Murat (a Croatian immigrant), Chester Hummel, a business associate of Murat, and the law firm of Minor, Popeney & Lebetsamer, the drafters of a partnership agreement at issue in this case.

Sometime in 1979, the Murats purchased an old Navy vessel with the intent of converting it into an ocean going fish processing plant. In order to finance the venture, the Murats formed a general partnership and invited the plaintiffs to invest in it. The Minor, Popeney & Lebetsamer law firm prepared a solicitation document and a partnership agreement to set up the partnership. After preparation of the agreement, the Murats solicited the plaintiffs to join the partnership. Eventually, twelve people invested $100,000 each to finance construction work on the vessel and provide start-up capital for the enterprise. Unfortunately, the venture failed and various creditors foreclosed on loans made to the partnership.

The plaintiffs brought various claims against Murat, Hummel and the law firm alleging violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j), RICO claims under 18 U.S.C. § 1964, and pendent state fraud and misrepresentation claims. In April, 1986, the defendants moved for an order specifying material facts existing without substantial controversy as to the securities claims. The motion also sought a ruling that the plaintiffs' general partnership interests were not securities. The court found that the general partnership interests of the plaintiffs did not fit the definition of an "investment contract" under securities law and granted summary judgment to the defendants. The court certified its order for an immediate appeal under Fed.R.Civ.P. 54(b). (*Matek*, 638 F.Supp. at 784.)

Early on in the protracted litigation of this case, the lower court (J. Lydick) enjoined the defendants from transferring or selling various promissory notes given by the plaintiffs to the defendants and enjoined the defendants from pursuing judicial foreclosure proceedings on various

deeds of trust securing the promissory notes. The court also issued a writ of attachment against some real property held by the Murats in the amount of $526,628 based on the court's preliminary determination that the plaintiffs would prevail on the merits of their claims. The Mateks posted a $50,000 surety bond against the preliminary injunction. *See* Fed.R.Civ.P. 65(c) (no preliminary injunction shall issue except on the giving of security). The Mateks also posted a $7,500 surety bond against the writ of attachment. After summary adjudication of the plaintiffs' claims in favor of the defendants, the defendants moved for vacation of the preliminary injunction and the writ of attachment. The court found that the writ of attachment was vacated by "operation of law" but did not disturb the preliminary injunction. The defendants subsequently moved for summary adjudication and execution on the plaintiffs' obligations on the surety bonds. The court denied the defendants' execution motion as premature. The court certified this order for an immediate appeal under Fed.R.Civ.P. 54(b). The appellants timely appealed. The Murat appellees appealed the denial of their motion for execution on the bonds.

## STANDARD OF REVIEW

■ The lower court treated the appellants' motion to dismiss as one for summary judgment. *Matek*, 638 F.Supp. at 777 n. 2.[1] A grant of summary judgment is re-

viewed de novo. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986).

## DISCUSSION

### I. *Securities Claims.*

The court below found that the appellants' interests were general partnership interests and not securities. The Securities Act of 1933, 15 U.S.C. §§ 77a–77bbbb and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78kk, define "security" similarly.[2]

The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, ... investment contract ... or, in general, any interest or instrument commonly known as a "security...."

15 U.S.C. § 77(b)(1)(§ 2(1) of the Securities Act of 1933).

■ The remedial nature of the securities acts requires that their language be interpreted liberally. *Tcherepnin*, 389 U.S. at 336, 88 S.Ct. at 553. General partnership interests are not included among the enumerated types of securities.[3] The parties, however, dispute whether the plaintiffs' interests are "investment contracts," one of the most litigated parts of the definition. In making this determination, form should not control over substance and the emphasis of the examination must be the economic reality of the transaction. *Id.* at 336, 88 S.Ct. at 553. The securities acts protect those without inside access to infor-

---

**1.** The Mateks argue that the 1986 motion for summary adjudication of the jurisdictional issues raised the same issues and facts as a motion made in 1985. This earlier motion was denied by the district court. The Murats argue that the 1986 motion is thus an "improper motion for reconsideration."

The 1986 motion did raise some of the same issues as the 1985 motion. However, every order short of a final decree is subject to reconsideration at the discretion of the district judge. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 & n. 14, 103 S.Ct. 927, 935 & n. 14, 74 L.Ed.2d 765 (1983). Subject matter jurisdiction, because of its intrinsic importance to the judicial power of the federal courts, is particularly suitable for reconsideration. *Potomac Passengers Ass'n v. Chesapeake and Ohio Ry.*, 520 F.2d 91, 95 & n. 22 (D.C.Cir.1975); *see also* 18 C. Wright & A. Miller & E. Cooper, Federal Practice and Procedure § 4418, at 174

(1981). The district court did not abuse its discretion in reconsidering its prior ruling.

**2.** "The definition of a security in § 3(a)(10) of the 1934 Act, ... is virtually identical [to § 2(1) of the 1933 Act] and, for present purposes, the coverage of the two Acts may be considered the same. *See Tcherepnin v. Knight*, 389 U.S. 332, 336, 342, 88 S.Ct. 548, 553, 556, 19 L.Ed.2d 564 (1967); S.Rep. No. 792, 73d Cong., 2d Sess. 14 (1934)." *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 847 n. 12, 95 S.Ct. 2051, 2058 n. 12, 44 L.Ed.2d 621 (1975). *See also Tcherepnin v. Knight*, 389 U.S. 332, 335–36, 88 S.Ct. 548, 553, 552–53, 19 L.Ed.2d 564 (1967); *Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 431 (9th Cir.1978).

**3.** Section 2(2) of the 1933 Act includes partnerships within the definition of "person". 15 U.S. C. § 77b(2).

mation about an investment from over-reaching or manipulation of their investments by insiders or promoters. The securities acts' disclosure and anti-fraud rules provide passive investors the means by which to assess the quality of investment opportunities. *See SEC v. Ralston Purina Co.*, 346 U.S. 119, 124–25, 73 S.Ct. 981, 984, 97 L.Ed. 1494 (1953).

In *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the Court defined "investment contracts" for the purposes of the 1934 Act: "The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Id.* at 301, 66 S.Ct. at 1104. As in most cases dealing with the *Howey* test, the present case revolves around whether the plaintiffs' profits were to come *solely* from the efforts of the defendants. The Ninth Circuit interpreted the *Howey* formula in *SEC v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973) (marketing of pyramid scheme found to be an investment contract). In *Glenn Turner*, this court determined that a literal application of the word "solely" in the *Howey* test might preclude finding various instruments to be securities if an investor put forth even a minimum of effort in relation to his investment. The court stated that "we adopt a more realistic test, whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Id.* at 482.[4] Under *Glenn Turner*, then, an investor might be involved to some degree in the managing of his investment, but if the manager or promoter's efforts are those which make or break the investment, then the interest may be considered a security.[5]

The Ninth Circuit has not directly faced the issue of whether general partnership interests that are marketed are securities for the purposes of the securities laws.[6] Under *Glenn Turner*, if the Murat efforts

---

**4.** The Supreme Court has noted but not adopted the *Glenn Turner* test.

> Although the issue is not presented in this case, we note that the Court of Appeals for the Ninth Circuit has held that "the word 'solely' should not be read as a strict or literal limitation on the definition of an investment contract, but rather must be construed realistically, so as to include within the definition those schemes which involve in substance, if not form, securities." *SEC v. Glenn W. Turner, Enterprises,* ... We express no view, however, as to the holding of this case.

*Forman*, 421 U.S. 837, 852 n. 16, 95 S.Ct. 2051, 2060 n. 16.

Arguably, in *Forman*, the Supreme Court adopted a more liberal view of "solely" when it stated that "[t]he touchstone [of *Howey*] is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *Forman*, 421 U.S. at 852, 95 S.Ct. at 2060. The *Glenn Turner* test has been adopted by various other circuits. *See, e.g., Goodwin v. Elkins & Co.*, 730 F.2d 99, 103 (3d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984); *Odom v. Slavik*, 703 F.2d 212, 215 (6th Cir.1983) (per curiam); *Williamson v. Tucker*, 645 F.2d 404, 418 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

**5.** Other Ninth Circuit cases take a "risk capital" approach in deciding whether an interest is a

security. *United Cal. Bank v. THC Financial Corp.*, 557 F.2d 1351, 1358 (9th Cir.1977); *El Khadem v. Equity Sec. Corp.*, 494 F.2d 1224, 1229 (9th Cir.), *cert. denied*, 419 U.S. 900, 95 S.Ct. 183, 42 L.Ed.2d 146 (1974). Under the "risk capital" theory the question is whether the funding party "contributed 'risk capital' subject to the 'entrepreneurial or managerial efforts' of [others]." *Great W. Bank & Trust v. Kotz*, 532 F.2d 1252, 1257 (9th Cir.1976) (per curiam).

Whether the "risk-capital" test is a "modern" alternative to the *Howey* test, *see Elson v. Geiger*, 506 F.Supp. 238, 241 n. 1 (E.D.Mich.1980), *aff'd mem.*, 701 F.2d 176 (6th Cir.1982), or is to be used in isolating the "investment" element of the *Howey* test is an open question. *See Union Planters Nat'l. Bank v. Commercial Credit Business Loans, Inc.*, 651 F.2d 1174 (6th Cir.), *cert. denied*, 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111 (1981). The "risk capital" test is primarily applied in determining whether notes are considered investment or commercial transactions. *See Amfac Mortgage*, 583 F.2d at 431–32.

**6.** In *Stone v. Millstein*, 804 F.2d 1434 (9th Cir. 1986), in a cursory opinion, the court held that a general partnership interest was not a security. The *Stone* facts, however, are quite different from the case at bar. In *Stone*, the parties were general partners in ownership of some real property for some twenty years. The defendants did not "market" or solicit the plaintiff's interest. The partnership was formed contemporaneously by all the principals. The plaintiff

in relation to the investment were the "undeniably significant ones," then the general partnership interests were securities. Several other courts have addressed the general partnership issue.[7] All but the Fifth Circuit, *Williamson v. Tucker*, 645 F.2d 404 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981), have held that general partnership interests are not securities for the purposes of the securities acts.[8] The various courts, however, have articulated different standards by which to analyze the interests.

## A. Bright–Line Rule.

■ In *Goodwin v. Elkins & Co.*, the Third Circuit held that an interest of a general partner in a brokerage was not a security for the purposes of the federal securities acts.[9] In *Goodwin*, the plaintiff worked for the defendant brokerage house for some twenty years. He was a general partner and a registered representative of the firm. After he became dissatisfied with certain management policies of the firm, he resigned pursuant to a written agreement. Shortly after he quit, the firm sold out to Bache, Halsey, a large New York brokerage house. The remaining partners made a lot of money from the sale. Goodwin's complaint charged violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and of SEC Rule 10(b)(5). The lower court dismissed on the defendant's 12(b)(6) motion. *Goodwin*, 730 F.2d at 101. On appeal, Judge Garth articulated a "bright-line" approach based on his analysis of Pennsylvania partnership law.[10] He noted that under the Uniform Partnership Act a general partner is an agent of his firm, notice to one partner is deemed notice to all, and partners are subject to unlimited liability for partnership losses. Also, every general partner has equal rights in the management and conduct of partnership business and every partner has an absolute veto power over any act that contravenes the partnership agreement. *Id.* at 103–04. Under these circumstances, Judge Garth concluded:

> [i]t is manifest that any person who possesses the powers, rights, and responsibilities described above cannot have invested his capital with the expectation of profits derived *solely* from the efforts of others, and therefore, cannot be the holder of a "security" as intended by the Act. Whatever subjective perceptions Goodwin may have entertained about his position in the firm, and whatever may have been the role he actually assumed, the *legal* interest which he enjoyed does not fall within the scope of the term "security" as intended by Congress.

*Id.* at 104.

Judge Garth noted that the UPA permits alteration of these rights by private con-

---

sold his interest to the other two parties. A short while later the remaining partners sold the property at a large profit. In affirming the district court's 12(b)(6) dismissal, the court noted that the plaintiff was president of corporations formed by the partnership, had the most business experience of the three partners and participated fully in the formation and management of the partnership. *Id.* at 1439.

**7.** See *SEC v. Professional Assoc.*, 731 F.2d 349 (6th Cir.1984); *Goodwin v. Elkins & Co.*, 730 F.2d 99 (3d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984); *Odom v. Slavik*, 703 F.2d 212 (6th Cir.1983) (per curiam); *Hirsch v. du Pont*, 553 F.2d 750 (2d Cir.1977); *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 650 F.Supp. 1378 (W.D.Va.1986); *New York Stock Exch. v. Sloan*, 394 F.Supp. 1303 (S.D.N.Y.1975).

**8.** In *Professional Associates*, the Sixth Circuit affirmed the grant of a preliminary injunction sought by the SEC against the marketing of joint venture or general partnership interests. The court held that the interests were securities. *Professional Associates*, 731 F.2d at 357. The interests in *Professional Associates*, however, were only nominally general partnership interests. They were marketed in some thirty states to approximately fifteen hundred investors. The interests were only masquerading as general partnership interests when in fact they were equivalent to limited partnership interests. Limited partnerships are almost always held to be securities. *SEC v. Murphy*, 626 F.2d 633, 640–41 (9th Cir.1980); *McGreghar Land Co. v. Meguiar*, 521 F.2d 822 (9th Cir.1975).

**9.** Judge Garth authored the opinion announcing the judgment. His "bright-line" analysis, however, was not joined by the rest of the court.

**10.** Pennsylvania, like most other states (including California), has adopted the Uniform Partnership Act (UPA). *Pa.Cons.Stat.Ann. tit. 59,* §§ 301–65 (Purdon Supp.1987); Cal.Corp.Code §§ 15001–45.

tract. He found, however, that contractual modification of partnership powers is significant only among partnership members and cannot

> diminish the power of a partner to represent the firm outside the partnership, below what the Pennsylvania statute has set forth as a minimum. Even if the [partnership agreement] contained the most draconian restrictions on the rights of non-management partners ... such partners would still possess a quantum of powers ... which, as a matter of law, would preclude their interest from being considered a security under the Act.

*Id.* at 107. Accordingly, the statute and the agreement must be read together to determine the legal power that results. *Id.*

Other courts follow a similar "bright-line" approach. *See Odom v. Slavik,* 703 F.2d 212, 215 (6th Cir.1983) (per curiam); *Hirsch v. du Pont,* 396 F.Supp. 1214, 1220 (S.D.N.Y.1975), *aff'd,* 553 F.2d 750 (2d Cir. 1977); *New York Stock Exch. Inc. v. Sloan,* 394 F.Supp. 1303, 1314 (S.D.N.Y. 1975) (issue of liability of NYSE under § 6 of Securities Exchange Act of 1934, 15 U.S.C. § 78f). In *Odom,* the Sixth Circuit noted that normally a general partnership interest is not considered a security and, if state partnership law does not preclude significant participation in partnership affairs, it is not a security. *Odom,* 703 F.2d at 215–16. Likewise, in *Sloan,* New York partnership law was the basis for excluding general partnership interests from the protection of the federal securities laws. The court found that the powers and responsibilities conferred on general partners by state law gave them an "active" role in partnership affairs dissimilar to that of "passive" investors in securities. *Sloan,* 394 F.Supp. at 1314. *See also Hirsch,* 396 F.Supp. at 1220–21 (following *Sloan* but noting that not all partnerships created under New York law vest adequate control and access to information in all partners).

We decline to follow the "bright-line" approach as articulated in *Goodwin.* In examining the issue of whether an interest is a security, substance and not form controls. *Tcherepnin,* 389 U.S. at 336, 88 S.Ct. at 553. Indeed, interests in a wide variety of schemes, which on their face do not seem to be securities, have been held to be investment contracts. *See SEC v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 351, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943); *Smith v. Gross,* 604 F.2d 639, 643 (9th Cir.1979) (per curiam) (contract to raise and sell earthworms held a security); *McLish v. Harris Farms, Inc.,* 507 F.Supp. 1075 (E.D.Cal. 1980) (cattle purchasing and feeding transaction held to be a security); Note, *Oil & Gas Leases: Should They Be Securities?,* 21 Land & Water L.Rev. 99, 106 (1986). On the other hand, even "stock" may not be a security if it does not otherwise "embod[y] some of the significant characteristics typically associated with the named instrument." *United Hous. Found. Inc. v. Forman,* 421 U.S. 837, 851, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975); *cf. Landreth Timber Co. v. Landreth,* 471 U.S. 681, 687, 105 S.Ct. 2297, 2302, 85 L.Ed.2d 692 (1985) (stock is stock when it possesses the standard indicia of common stock regardless of form of underlying transaction). *Forman* requires that the *Howey* "economic reality" test apply in all situations where the interest does not squarely fall within the statutory definitions of § 2(1) of the 1933 Act. *Forman,* 421 U.S. at 851–52, 95 S.Ct. at 2060.[11] Application of a "bright-line" approach, holding that no general partnership formed pursuant to the UPA is a security, ignores the "economic reality" test. A nominal general partnership created pursuant to state law may in reality operate more like a limited partnership, the functional equivalent of a public offering of preferred stock. *SEC v. Murphy,* 626 F.2d 633, 640–41 (9th Cir.1980); 1 Loss, *Securi-*

---

**11.** Especially in the area of commercial notes, a literal reading of the securities acts may not be appropriate. Despite the clear language of 15 U.S.C. §§ 77b(1), 77c(a)(3) and 78c(a)(10), which state that notes of greater than nine months duration are securities and notes with less than nine months duration are not securi-

ties, the courts apply the "economic reality" test to these interests as well. *Great W. Bank & Trust v. Kotz,* 532 F.2d 1252, 1256, (9th Cir.1976) (per curiam); *Sanders v. John Nuveen & Co, Inc.,* 463 F.2d 1075, 1079 (7th Cir.), *cert. denied,* 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972).

*ties Regulation* § 3A, VII, at 503 (2d ed. 1961 & Supp.1962).

The possibilities of fraud in the securities area are great. Entrepreneurs may attempt to evade the fraud provisions of the securities laws by formally denominating investments as other than securities. For example, in *Lino v. City Investing Co.*, 487 F.2d 689 (3d Cir.1973), the promoter marketed licenses to investors to sell franchises. Although the court held that the franchise agreements were not securities, it did so only after examining whether the investors were required to expend significant effort in relation to their investment. *Lino*, 487 F.2d at 691–93. Indeed, the court in *Glenn Turner*, where a self-improvement/business motivation course franchise was offered to investors, recognized that a "bright-line" type rule might facilitate fraudulent offerings by the simple device of writing into contracts that the investor contribute a modicum of effort to the success of the enterprise. *Glenn Turner*, 474 F.2d at 482.

Further, we believe Judge Garth's analysis in *Goodwin* may be flawed because it focuses too much on participation in management rather than on access to information about the investment. The former does not necessarily guarantee the latter.

■ The principal purpose of the securities acts is to protect investors by promoting full disclosure of information necessary to informed investment decisions. *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186, 84 S.Ct. 275, 280, 11 L.Ed.2d 237 (1963); *A.C. Frost & Co. v. Coeur D'Alene Mines Corp.*, 312 U.S. 38, 40, 61 S.Ct. 414, 415, 85 L.Ed. 500 (1941); *Amfac Mortgage Corp. v. Arizona Mall of Tempe*, 583 F.2d 426, 432–33 (9th Cir.1978). Therefore, access to information about the in-

vestment, and not managerial control, is the most significant factor. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126–27, 73 S.Ct. 981, 985, 97 L.Ed. 1494 (1953) (construing § 4(1) of the Securities Act of 1933, private offering exception); *Hirsch*, 396 F.Supp. at 1219. Judge Garth's position is predicated on the degree of management control afforded a general partner by state law and not on access to information. *See Goodwin*, 730 F.2d at 106, 107. Though Judge Garth notes that access to information is part of the mix of factors to be examined, his overriding focus is on managerial control. Thus, we are constrained to follow a different mode of analysis in determining whether these investments constitute securities. We must focus on the "economic realities" of this particular transaction to determine whether these investors are in need of the protections of the securities act. *See Ralston Purina*, 346 U.S. at 125–26, 73 S.Ct. at 984–85.

**B. *Williamson* Test.**

■ The appellants rely on *Williamson* to argue that the partnership functioned *de facto* like a limited partnership. The appellants argue that the court must look to the actual participation of the investors and their relationship to the promoters to determine whether their general partnership interests are securities. The appellants' argument, like *Williamson*, goes too far. In *Williamson*, the Fifth Circuit examined the issue of whether general partnership interests in a real estate development scheme were securities.[12] The *Williamson* court noted the presumption that general partnerships are not securities and stated that plaintiffs "have an extremely difficult factual burden if they are to establish that the [general partnership] interests they pur-

---

**12.** *Williamson* did not hold that the partnership interests were securities. The appellate court reviewed the lower court's dismissal for lack of subject matter jurisdiction as a dismissal based on the pleadings. The court was thus compelled to apply the strict standard of *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (standard for dismissal on the pleadings for lack of subject matter jurisdiction), to the lower court decision. Under *Bell*, a complaint may be dismissed for lack of subject matter jurisdiction only where the alleged federal claim is immaterial and made solely for the purpose of obtaining federal jurisdiction or where the claim is wholly insubstantial and frivolous. *Id.* The *Williamson* court remanded, holding only that the securities claims were not frivolous, immaterial or insubstantial. The court noted that if it were reviewing a grant of summary judgment its standard of review would be much different. *Williamson*, 645 F.2d at 426.

chased are securities." *Williamson,* 654 F.2d at 424. In dicta, the court applied a three-part test to determine whether a general partnership interest that on its face creates a true partnership is a security.

A general partnership or joint venture interest can be designated a security if the investor can establish, for example, that (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.

*Id.* The plaintiffs argue that their interests meet the *Williamson* test. Except for the first element, see Section C., *infra,* we decline to follow the *Williamson* test.

The two other "prongs" of the *Williamson* test create uncertainty in the area of business investing. They require that a promoter investigate the business experience and acumen of all potential investors and then tailor his offering to them. To some he might offer a general partnership interest, to others a security. Under the *Williamson* test, passage of time might also become a significant factor in determining whether an investment interest is a security. An interest marketed as a general partnership might be transformed into a security simply because its holder is not diligent or knowledgeable in exercising his rights under the agreement. The focus must be on the expectations the parties had in the *original transaction.* "The test ... 'is what character the instrument is given in commerce by the *terms of the offer,* the plan of distribution, and the *economic inducements* held out to the prospect.'" *Marine Bank v. Weaver,* 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982) (emphasis added) (quoting *SEC v. United*

*Benefit Life Ins. Co.,* 320 U.S. 344, 352–53, 64 S.Ct. 120, 124, 88 L.Ed. 88 (1943)). *See also Williamson,* 645 F.2d at 424 n. 14; *Vincent v. Moench,* 473 F.2d 430, 435–36 (10th Cir.1973) (if parties treat the entity like a general partnership it is not a security). Thus, it is immaterial whether the partnership later fell into a pattern of circumscribed partnership participation by some partners.

The *Williamson* test would also require the courts to find an investment a security in relation to some investors and a partnership in relation to others. Such would be the result in the case presently before this court. Though as a whole, the investors here are a relatively sophisticated group, a few investors were not at all experienced in business affairs. Categorizing the plaintiffs in this fashion is untenable.

The Tenth and the Eighth Circuits follow the principle that regardless of the control actually exercised, if the partnership contract retains real power in the partners, then the investments are not securities. In *Ballard & Cordell Corp. v. Zoller & Danneberg Exploration, Ltd.,* 544 F.2d 1059 (10th Cir.1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1060 (1977), the investors argued that their 50% working interest in two oil wells and lease units constituted an investment contract because the investors depended on the independent operator who worked the wells. Apparently, the operator—only related by contract to the seller of the lease units—had complete control over production decisions. The court, nevertheless, held that the terms of the agreement gave the investor the kind of control over his investment not found in a security. The court noted contract rights such as the right to select a new operator if the old operator pulled out, the right to refuse participation in specific operations, and the right to withhold consent for certain operating expenses. It found that these contract rights showed a degree of active control that precluded finding the interests to be investment contracts. *Id.* at 1065; *see also Mr. Steak, Inc. v. River City Steak, Inc.,* 460 F.2d 666, 669 (10th Cir.1972) (contract rights

determinative, actual delegation of contract powers and rights immaterial).

Similarly, the Eighth Circuit looks to the partnership agreement, and not to the actual participation of the investors in the scheme, to determine whether an interest is an investment contract. In *Fargo Partners v. Dain Corp.*, 540 F.2d 912 (8th Cir. 1976), the plaintiff bought an apartment complex and granted back to the vendor the exclusive right to manage the property. The agreement gave the vendor/manager complete control over management of the complex. The court, however, found the investment not a security based solely on the fact that the contract contained a 30–day cancellation provision. The cancellation provision alone gave the investor sufficient control over his investment that he was not dependent solely on the efforts of others. *Id.* at 914–15 (citing *Mr. Steak*). In a case of even more tenuous investor control over the management of the investment, the Eighth Circuit found that a three year irrevocable management contract given to the vendor provided the investor with sufficient control over his investment because of the limited time span of the management contract. *Schultz v. Dain Corp.*, 568 F.2d 612, 615–16 (8th Cir.1978).[13]

In *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 650 F.Supp. 1378 (W.D.Va.1986), a case factually similar to the case at bar, a general partnership comprised twenty-three investors in a commercial fishing business. Some of the investors brought suit against the promoters and managers of the partnership. The court noted that the agreement gave the general partners typical partnership powers to direct and control the operations of the entity. It also gave the partners access to partnership records and the right to a private audit or accounting. *Id.* at 1381. The partners, a group of doctors and lawyers, did not exercise many of their partnership powers. The court, however, found that the *actual* control of the partners was irrelevant as long as the partnership agreement afforded them the *power* to act.

> Even when general partners do not individually have decisive control over major decisions, they do have the sort of influence which generally provides them with access to important information and protection against a dependence on others.... The managerial powers and the right of inspection vested in general partners therefore takes them outside the intended scope of federal securities law.

*Id.* at 1383–84.

We agree with the Tenth and Eighth Circuits that the proper focus of the examination must be the contract.

### C. The Partnership Agreement.

The first "prong" of the *Williamson* test[14] is encompassed by our focus on the partnership agreement. If the partnership agreement does not in fact create a general partnership but creates a limited partnership interest akin to an offering of preferred stock, then the interest may be found to be a security. *See SEC v. Murphy*, 626 F.2d 633, 640–41 (9th Cir.1980). We decline, however, to adopt the other two "prongs" of the *Williamson* test.[15]

---

**13.** Judges Seitz and Becker in *Goodwin* believed "that the terms of the Limited Partnership Agreement dispose of Goodwin's securities claims as a matter of law, even if his allegations concerning management of Elkins & Co. are accepted as true." *Goodwin*, 730 F.2d at 114 (Seitz, J., concurring).

**14.** The *Williamson* court noted that the three prongs of its "test" are not exclusive.

> These are the only factors relevant to the issue that are at all implicated by the facts of this case. But this is not to say that other factors could not also give rise to such a dependence on the promoter or manager that the exercise

of partnership powers would be effectively precluded.

*Williamson*, 645 F.2d at 424 n. 15.

**15.** Even if we were to adopt the entire *Williamson* test, the plaintiffs here do not meet its criteria.

> The first part of the test asks whether the partnership agreement actually distributes power like a limited partnership agreement. As demonstrated, this is not the case. The second prong of the test, focusing on the business experience and knowledge of the plaintiffs, is likewise not met by the plaintiffs. The undisputed facts demonstrate that almost all of the non-managing partners were generally experienced

The proper focus must be the partnership agreement and not how in fact the entity functioned in carrying out its business affairs.

■ The agreement in this case is a standard general partnership contract.[16] It puts both managerial control and access to partnership information in the hands of the general partners. It is denominated a general partnership to which California law applies. It provides that no partner may withdraw capital from the partnership without the consent of all partners. No partner may lend or advance partnership money without the approval of the majority. The agreement makes the Murats the "managing partners" with the power to control the day-to-day business of the entity and assume direction of its operations. However, it also requires that they consult as far as practicable with the nonmanaging partners about their business decisions. Certain partnership acts may be done only with the consent of a majority of partners, including borrowing money for the partnership, transferring or hypothecating any partnership claims, and selling any partnership property except in the ordinary course of business. Further, the general partnership interests are not freely transferable. The admission of new partners into the partnership requires majority agreement. Any amendment to the agreement requires 100% approval. Also, the partnership's books are open for inspection to all partners.

Analysis of the partnership agreement leads to the conclusion that the appellants' interests are not securities.[17] The agreement clearly creates a general partnership vesting strong powers of supervision and control in the plaintiffs. The terms of the agreement provide them with all the access and ability to protect their investment that the securities laws would otherwise provide. It creates powers and duties in the general partners which are not typical of the passive investor in a security. *See Williamson,* 645 F.2d at 422; *see also Wolf v. Banco Nacional de Mexico,* 549 F.Supp. 841, 852 n. 17 (N.D.Cal.1982) (general partnership interest is not a security because the partners are mutual agents), *rev'd on other grounds,* 739 F.2d 1458, 1464 (9th Cir.1984), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985).

In the case at bar, the partnership agreement clearly creates a standard general partnership which on its face provided the plaintiffs with sufficient power to protect their investments. The appellants made no showing and are unable to show that they were prevented from exercising their powers under the agreement. The partnership agreement also provided them with access to the partnerships records and to information about its day-to-day business affairs. There is no evidence that the general partnership agreement was purposefully drafted to escape the application of the securities laws. The evidence points to the clear intent to establish a working general part-

in the formation and operation of various types of businesses both related and unrelated to the partnership business.

The third prong of the *Williamson* test is also not met here. The investors were not so dependent on the unique entrepreneurial or managerial abilities of the defendants that they could not meaningfully exercise their partnership power. The undisputed evidence of their participation in various partnership acts shows that they were quite able to participate in the business. Among other things, the plaintiffs signed partnership borrowing authorizations, personal guarantees, and loan agreements with various creditors. Several of the plaintiffs approved the hypothecation of partnership property. Several of the plaintiffs voted to admit new partners into the partnership. Other partners consented to the approval of loans to the partnership by other partners. Also, many of the partners par-

ticipated in the business affairs of the partnership.

16. The attorney defendants also prepared a "subscription agreement" used by the defendants when they approached the plaintiffs with their offer to invest in the partnership. The subscription agreement does not purport to create an interest in a security. Rather, it clearly contemplates formation of a general partnership.

17. Title 15 U.S.C. § 77c(a)(11) (section 3(a)(11) of the 1933 Act) provides that the provisions of the 1933 Act do not apply to securities sold intrastate. *See also* 15 U.S.C. § 78c(a)(12) (exempted securities may include intrastate offerings). The parties do not argue an intrastate exception to the securities laws. We do not, therefore, reach this issue.

nership. We hold that these general partnership interests are not securities under the federal securities laws.

## II. *Pendent State Claims.*

■ The appellants also claim the district court erred in dismissal of their pendent state claims. The question in this case is one of discretion and not power. As long as the federal claims are substantial enough to confer subject matter jurisdiction on the federal court, it may in its discretion decide to hear pendent state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see also Wren v. Sletten Constr. Co.*, 654 F.2d 529, 536 (9th Cir.1981). The lower court dismissed the pendent state claims because the claims over which it retained jurisdiction—the RICO claims—were so complex that retention of the state claims would "needlessly complicate a trial and unnecessarily waste the court's time." The trial court found that the state claims involved substantially different issues and proof than those required to establish RICO violations. The court also determined that there was a strong likelihood that the state law issues would predominate. *Matek v. Murat*, 638 F.Supp. 775, 783 (C.D.Cal.1986).

*Gibbs* established that if it appears that the state law issues substantially predominate in terms of proof, scope of the issues raised or comprehensiveness in the remedies sought, then the state claims should be dismissed without prejudice and left for the state courts. *Gibbs*, 383 U.S. at 726–27, 86 S.Ct. at 1139. Clearly, the trial court did not abuse its discretion in dismissing these pendent state claims. Ultimately, as the lower court noted, the appellants are prosecuting numerous state claims. Judicial economy and fairness to the litigants is better served by dismissal of the pendent state claims. *Determined Prods., Inc. v. R. Dakin & Co.*, 514 F.Supp. 645, 649 (N.D.

Cal.1979), *aff'd mem.*, 649 F.2d 866 (9th Cir.1981).[18]

Appellants contend that the district court abused its discretion because the dismissed state claims face possible statute of limitation barriers in California state court. However, the Superior Court of the State of California for the County of Los Angeles entered a minute order ruling that the equitable tolling doctrine, *see Nichols v. Canoga Indus.*, 83 Cal.App.3d 956, 963, 142 Cal.Rptr. 459, 464 (1978), applied to these state claims. *Security Pacific Nat. Bank v. Murat*, LASC Case No. C 429576 (July 29, 1987). Therefore, no statute of limitations problems exist.

Relying on *Contemporary Serv. Corp. v. Universal City Studios, Inc.*, 655 F.Supp. 885 (C.D.Cal.1987), the appellants also argue that even if the lower court did not abuse its discretion by dismissing the pendent state claims, it should have remanded the claims to state court instead of dismissing them. *Contemporary Services*, however, is inapposite. It addresses the issue of remand of pendent state claims when a case has first been removed from state to federal court. Also, *Contemporary Services* held only that it was not an abuse of discretion to remand instead of dismissing pendent state claims. *Id.* at 896. It does not stand for the proposition, as the appellants argue, that remand is required. It was not an abuse of discretion to dismiss the pendent claims. *Bale v. General Tel. Co. of Cal.*, 795 F.2d 775, 778 (9th Cir.1986).

## III. *Surety Bonds.*

The Murats assign as error the decision of the lower court denying them execution on surety bonds (in the amount of $57,500) given by the appellants for a preliminary injunction and a writ of attachment pursuant to Fed.R.Civ.P. 65(c). Fed.R.Civ.P. 65(c) provides:

(c) Security. No restraining order or preliminary injunction shall issue except

18. The appellants also argue that it was error to stay the RICO claims. The trial court simply stayed the RICO claims pending this appeal. The RICO claims will be heard as soon as the appellants' appeal in this case is decided. The appellants' citation of cases disfavoring federal court postponement of jurisdiction on abstention or "wise judicial administration" grounds is thus inapplicable.

upon the giving of security by the applicant, and such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. *See also* Fed.R.Civ.P. Rule 65.1 (Security: Proceedings Against Sureties).

 Our standard of review of the trial court's decision is somewhat unclear. Some courts treat the issue under a typical abuse of discretion standard. *H & R Block, Inc. v. McCaslin,* 541 F.2d 1098, 1099 (5th Cir.1976) (per curiam), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977); *Page Communications Eng., Inc. v. Froehlke,* 475 F.2d 994, 997 (D.C.Cir.1973) (per curiam). Other courts apply a de novo standard. *Coyne–Delany Co., Inc. v. Capital Dev. Bd.,* 717 F.2d 385, 392 (7th Cir.1983); *Atomic Oil Co. v. Bardahl Oil Co.,* 419 F.2d 1097, 1102 (10th Cir.1969), *cert. denied,* 397 U.S. 1063, 90 S.Ct. 1500, 25 L.Ed.2d 685 (1970). We hold that the lower court's decision that it was "premature" to execute on the surety bonds was a decision of law to which we apply a de novo standard. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The lower court held that the defendants' execution motion was premature because the court, by retaining jurisdiction over the appellants' RICO claims pending this appeal, had not made a final decision as to all claims in the case. The Murats argue that the preliminary injunction was based on a finding that the plaintiffs would likely prevail on the merits of their securities claims. Consequently, once the lower court granted them summary judgment on the securities claims, the injunction dissolved by operation of law. Thus, there was a final determination as to all the claims giving rise to an injunction and execution of the bond should proceed.

 The appellants' claim that the injunction was based solely on a preliminary finding that the plaintiffs' security claims would likely prevail on the merits is incorrect. The order granting the preliminary injunction, and the memorandum of decision accompanying it, did not state that the injunction was based solely on analysis of the securities claims. Rather, the court simply found that it had "federal question" and pendent jurisdiction and that the "plaintiffs [had] made a sufficiently clear showing of probable success on the merits...." Thus, the injunction was based as much on analysis of the RICO and state claims as on the securities claims. This circuit, however, has held that a private RICO claim cannot support an injunction. *See Religious Technology Center v. Wollersheim,* 796 F.2d 1076, 1084 (9th Cir. 1986), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987). In *Wollersheim,* the court concluded that there was no clear indicia of congressional intent to authorize private injunctive relief for RICO plaintiffs. *Id.* at 1088. Because the district court here dismissed the pendent state claims—a decision within the trial court's discretion—the injunction could only be based on the RICO claims. Given that the Ninth Circuit precludes an injunction in a private RICO action, there are no proper claims on which to base an injunction. Thus, it was not "premature" for the trial court to grant execution on the bonds. We order execution on the surety bonds.

 The appellees argue that they should recover attorney's fees and interest on the money held during the period of the injunction. Neither Fed.R.Civ.P. 65(c) nor 65.1 explicitly delineate what damages are recoverable in an action on a preliminary injunction bond. An improperly enjoined party may not demand damages on the bond simply because the injunction was improperly granted. He must demonstrate injury as a consequence of the injunction. *United Motors Serv., Inc. v. Tropic–Aire, Inc.,* 57 F.2d 479, 487 (8th Cir.1932); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2973, at 654–55 (1973). Also, this circuit has held that the limit of damages a party can obtain for wrongful injunction, both against the surety and the plaintiff, is the amount of the bond. *Buddy Sys., Inc. v. Exer–Genie, Inc.,* 545 F.2d 1164, 1168 (9th Cir.1976), *cert. denied,* 431

U.S. 903, 97 S.Ct. 1694, 52 L.Ed.2d 387 (1977).

 Attorney's fees are not recoverable as damages in an action on an injunction bond. *Fireman's Fund Ins. Co. v. S.E.K. Constr. Co.*, 436 F.2d 1345, 1351 (10th Cir.1971). Whether the appellees can obtain interest on the money tied up by the injunction is an item of damages for the lower court to consider. In no case, however, may an award based on these "interest damages" or other damages exceed the amount of the surety bond.[19]

## IV. *Costs.*

The appellees argue that it was error for the trial court not to award them costs after rendering a decision in their favor. Fed.R.Civ.P. 54(d) directs the district court to award costs to the "prevailing party" as a matter of course. As the lower court determined, an award of costs to the Murat appellees would be premature because the RICO claims against them have yet to be adjudicated. However, all RICO claims against the Lebetsamer appellees have been dropped. Therefore, we award costs to the Lebetsamer appellees both before the district court and on appeal.

## CONCLUSION

Under *Howey*, the appellants' partnership interests were not securities. Also, the district court properly exercised its discretion in dismissing the pendent state claims.

An injunction may not issue in a private civil RICO action. Thus, since the federal securities claims were disposed of and the pendent state claims were dismissed, the injunction dissolved as a matter of law. Therefore, execution on the surety bonds should proceed. We AFFIRM the district court's grant of summary judgment and dismissal of the pendent state claims. We order execution on the surety bonds.

CANBY, Circuit Judge, concurring:

I agree with everything Judge Wiggins has said about the pendent claims, the surety bonds, and costs. I also agree with the result reached on the securities question, but my analysis differs from that of the majority.

The majority properly rejects a "bright-line" rule on the ground that "substance and not form controls." *Supra*, at 727. It also states, again correctly, that economic realities must govern:

> A nominal general partnership created pursuant to state law may in reality operate more like a limited partnership, the functional equivalent of a public offering of preferred stock.

*Id.* at 727.

I find considerable tension, however, between this rejection of formalism and the majority's holding that appears to give controlling effect to the terms of the partnership agreement. Thus, the majority rejects the last two prongs of the test of *Williamson v. Tucker*, 645 F.2d 404, 424 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981), which permit consideration of the investor's lack of knowledge and experience, and his or her dependence upon some unique ability of the promoter or manager. *Supra*, at 731. To me, it is difficult to determine whether a general partnership may "in reality operate" like a limited partnership unless I am permitted to look beyond the terms of the agreement itself. Such evidence may have an important bearing on the nature of the interests that were offered and sold, and the expectations of the parties at the time they entered the transaction. *See Williamson*, 645 F.2d at 424, n. 14. While I agree that "an investor who claims his general partnership ... interest is an investment contract has a difficult burden to overcome," *id.* at 424, I would not preclude the investor from meeting that burden with facts extrinsic to the partnership agreement. In-

---

**19.** Murat claims that *J.A. Jones Constr. Co. v. Plumbers and Pipe Fitters Local 598*, 568 F.2d 1292 (9th Cir.1978), allowed recovery of attorney's fees or interest. *J.A. Jones* is inapplicable to this case. There, the court in dicta examined whether attorney's fees are available to a party posting a bond pursuant to an action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

deed, we considered such evidence in *Deutsch Energy Co. v. Mazur,* 813 F.2d 1567 (9th Cir.1987) (general business expertise of investor), and *Stone v. Millstein,* 804 F.2d 1434, 1439 (9th Cir.1986) (investor's actual participation in business), although in both cases we concluded that the facts established that no security was involved.

Perhaps the majority's rule is not so absolute as it seems. The opinion states that "appellants made no showing and are unable to show that they were prevented from exercising their powers under the agreement." *Supra* at 731. The opinion also seems to suggest that general partnership interests may be treated as securities if they are "only masquerading as general partnership interests." *Id.* at n. 8. To show that the investor is unable to exercise powers granted on the face of the agreement, or that the agreement is "masquerading," it would seem necessary to resort to extrinsic facts. I would make that implication explicit, and would not exclude whole categories of evidence such as the lack of sophistication of the investor, or reliance on the expertise of the promoter or manager.

I concur in the result reached by the majority, however, because I agree with its statement that plaintiffs failed to meet the requirements of the *Williamson* test. *Supra,* at n. 15. The undisputed evidence of plaintiffs' sophistication, participation, and exercise of the powers of partnership refutes their contention that they entered the partnership as essentially passive investors. *Id.* Under the rule I would apply, plaintiffs have not borne the heavy burden of showing that their interests were other than the general partnerships set forth in the agreement. Their securities claim accordingly fails.